**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0211n.06
Filed: March 19, 2009

No. 07-4472

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
|     Plaintiff-Appellee | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Clennie Manning, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
|     Defendant-Appellant | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, ROGERS, and WHITE, Circuit Judges

**MERRITT, Circuit Judge.** Clennie Manning began a three-year term of supervised release on May 1, 2003. After violating a litany of its conditions over the course of several years, Manning's supervised release was revoked on October 10, 2007, and he was sentenced to 18 months' imprisonment, followed by a new 18-month term of supervised release. On appeal, Manning contends that the district court lacked jurisdiction to revoke his supervised release because his initial three-year term should have expired on May 1, 2006, roughly 17 months before his actual revocation. As we explain below, this argument ignores 18 U.S.C. § 3624(e), which tolls a term of supervised release while a person is incarcerated for 30 consecutive days or longer, and 18 U.S.C. § 3583(i), which authorizes revocation after a term of supervised release has expired if certain conditions are met.

In the alternative, Manning argues that his sentence after revocation was procedurally unreasonable. We agree, and remand the case for resentencing.

## I. Background

In November 2000, Clennie Manning pleaded guilty to two counts of bank robbery. He was sentenced to forty months' imprisonment followed by a three-year term of supervised release, which began when he was released from prison on May 1, 2003. Roughly six months later, Manning was arrested and admitted to violating several conditions of his supervised release. The district court continued Manning on supervised release with added conditions, including that Manning complete a 30-day in-patient drug treatment program, followed by three months in a community treatment center.

Manning completed the in-patient program and moved into a community treatment center. Initial success there resulted in his early release, conditioned on his continued counseling at a local treatment center. Manning missed several sessions at this treatment center, resulting in the district court issuing an arrest warrant on May 18, 2004. This warrant was not immediately executed, apparently because Manning was in state custody, and a new warrant was issued on February 8, 2005, pursuant to a supplemental petition that alleged four violations: the failure to attend weekly counseling sessions, the failure to submit urine samples, the failure to notify the Probation Office that he was cited for driving without a license, and two recent state-court convictions — one for aggravated possession of drugs, and a second for breaking and entering and attempted theft.

The revocation hearing was deferred for several months so that Manning could finish serving his state prison sentences. On October 5, 2005, Manning admitted to the allegations listed in the

supplemental petition.[1]  At the hearing, Manning and his lawyer both stated that Manning had just served one year in state prison and "could be serving another year for the pending case in Montgomery County."  The district court noted that, on the basis of these violations, "[i]t would be the easiest thing in the world to send this gentleman to prison," but that doing so would not cure the drug problem that, in the district court's view, was the root cause of Manning's violations.  Revoking supervised release, the district court said, would do "nothing but indicate that we're giving up on any attempt we can to help this gentleman."  Instead, the district court continued Manning on supervised release until the pending charges had been resolved.  Another hearing, on December 3, 2005, resulted in a further continuance.

On March 28, 2006, Manning appeared at a hearing to determine the final disposition of the revocation petition.  At the hearing, he stated that he had picked up three convictions since May 1, 2003 and had served "[a]lmost two years in prison."  Although the probation office recommended continuing Manning on supervised release, the district court stated in private conference that "to extend his supervised release . . . with nothing hanging over his head is not the way to go.  I think it's a recipe for failure."  Instead, the district court revoked Manning's supervised release and sentenced him to two-years' imprisonment, but stayed the execution of the sentence for four months. The court told Manning that during that four-month period, he was to enter a halfway house, receive out-patient drug treatment, and attend Alcoholics Anonymous and Narcotics Anonymous meetings, all while complying with the preexisting conditions of his supervised release.  If Manning completed

---

[1]A second supplemental petition had also alleged a new violation — a separate incident involving breaking and entering and theft.  Manning denied the new allegation and it was stricken from the petition and never reinstated.

the four-month period successfully, the district court would vacate the revocation and two-year prison sentence. On August 24, 2006, the district court did just that and Manning was continued on supervised release with new conditions added.

On December 28, 2006, the district court issued a new arrest warrant, pursuant to a petition alleging that Manning had committed aggravated robbery; tested positive for drugs; failed to reside with his mother; failed to attend the required drug- and alcohol-counseling meetings; associated with a convicted felon; and failed to report to the Probation Office. The warrant was lodged against Manning as a detainer, since he was in state custody as a result of the aggravated-robbery charges.

At a hearing on October 1, 2007, the district court read Manning the allegations, noting that the aggravated-robbery charges had ripened into a conviction on August 13, 2007, and that the petition would be updated to reflect this fact. Manning admitted the other five allegations and acknowledged the fact of his recent conviction, but denied committing the underlying crime in order to avoid jeopardizing his pending appeal in that case. The district court stated that it would accept this qualified admission once the petition had been amended.

On October 10, 2007, the district court officially revoked Manning's supervised release and sentenced him to 18 months' imprisonment, to be served consecutive to his state sentence, followed by 18 months of supervised release. If, however, Manning's state-court conviction were affirmed and he were to be subject to post-release state supervision, the court would vacate the new term of supervised release so that Manning would not be subject to state and federal supervision simultaneously. At the hearing, the court referred to a recent "telephone conference call had between court, counsel, and the probation office," where the parties apparently discussed the sentence without

agreeing to specific terms. Perhaps as a result of this discussion, the district court said very little at

the revocation hearing about the reasons for the sentence. The court made no reference to the

Sentencing Guidelines' policy statements, nor to 18 U.S.C. § 3553. Neither Manning nor his lawyer

raised any specific objections, but Manning stated his intention to appeal the sentence, and this

appeal followed.

## II. Jurisdiction To Revoke Supervised Release

Manning contends that because his three-year term of supervised release began on May 1,

2003, it must have ended on May 1, 2006, and that the district court therefore lacked jurisdiction to

revoke his supervised release on October 10, 2007.[2] But this argument ignores 18 U.S.C. § 3624(e),

which states that "[a] term of supervised release does not run during any period in which the person

is imprisoned in connection with a conviction for a Federal, State, or local crime unless the

imprisonment is for a period of less than 30 consecutive days." It is not clear from the record

precisely how much time Manning spent in prison during the relevant time period. His in-court

statements range from one year to "right at 18 months or better" to "[a]lmost two years." If this

latter statement is accurate, then his term of supervised release would have been tolled until slightly

before May 1, 2008, such that the district court would have had jurisdiction on October 10, 2007.

In an abundance of caution, however, it is safe to say that the record clearly reflects that

Manning spent a minimum of one year imprisoned in connection with a conviction for a Federal,

---

[2]"The question of whether a district court has jurisdiction to rule upon a petition to revoke a defendant's supervised release after the term of supervised release is alleged to have ended is a question of law that is subject to de novo review." *United States v. Goins*, 516 F.3d 416, 419 (6th Cir. 2008) (quotations omitted).

State, or local crime, thus tolling the expiration of his supervised release until at least May 1, 2007.[3]

Under 18 U.S.C. § 3583(i), "[t]he power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and . . . a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." Thus, even if Manning's term of supervised release expired on May 1, 2007, the district court would still have the power to revoke his supervised release and sentence him to prison if (a) the events underlying the revocation occurred before May 1, 2007, (b) a warrant was issued before May 1, 2007, and (c) the period between the expiration and the revocation was no longer than reasonably necessary to adjudicate those matters. These conditions are met here. The events described in the final petition all occurred on or before December 19, 2006. A warrant was issued on December 28, 2006. The nine-and-a-half-month delay between that time and the revocation was reasonably necessary to adjudicate the matters because Manning was evidently in state custody until his appearance was secured pursuant to a writ of habeas corpus ad prosequendum. *See United States v. Madden*, 515 F.3d 601, 606-07 (6th Cir. 2008) (upholding as reasonably necessary a three-year delay between the issuance of a warrant and the revocation of supervised release, where the defendant "was either in government custody or being brought up on

---

[3]Although we do not formally take judicial notice of it, this conclusion is consistent with public records of the Ohio Department of Rehabilitation and Correction, which indicate that Manning was incarcerated for more than a year during the relevant period.

charges almost constantly" during the interval); *United States v. Ramos*, 401 F.3d 111, 117-18 (2d Cir. 2005) (upholding as reasonably necessary a two-year delay). Therefore, the district court had jurisdiction to revoke Manning's supervised release and impose a sentence.[4]

### III. Reasonableness of the Sentence

Manning next contends that his sentence was procedurally unreasonable. We agree and remand the case for resentencing.

### *A. Standard of Review*

On appeal, Manning concedes that he did not raise any specific objections to his sentence in the court below. But he contends that our review is not governed by the plain-error standard that would normally result from this failure, *see United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007), because the district court failed to meet the procedural requirements established by this Court in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). In *Bostic*, the court held that a district court must, "after pronouncing the defendant's sentence but before adjourning the sentencing hearing, . . . ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *Id.* at 872. "If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal." *Id.* Although the district court's inquiry need not take any single, specific form, it "can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the

---

[4]The foregoing should not be construed as a conclusion about precisely when Manning's term of supervised release expired (if it has, in fact, expired). A later court may need to make specific tolling-related findings. For these purposes, we only conclude that the term did not expire before May 1, 2007, and that if it did expire on that date, the subsequent revocation was still authorized.

sentence that have not been previously raised." *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006).

Here, the district court did not ask the parties whether they had any objections to the sentence just imposed. Rather, the court simply asked defense counsel if there was anything further for the record and asked Manning if he had any questions. We have previously held that general inquiries of that nature are insufficient to satisfy the requirements of *Bostic*. *See United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (holding that the question "Do you have anything further for the record, Mr. Canady?" did not satisfy *Bostic*); *Clark*, 469 F.3d at 570 (holding that the question "Anything else, Ms. Goode?" did not satisfy *Bostic*). Furthermore, one of the principal rationales behind the *Bostic* rule is to give the district court the opportunity to determine whether either party objects to the sentence, and, if so, on what basis, so that the court can address those objections at the time. *See Bostic*, 371 F.3d at 873. Here, Manning stated his intent to appeal the sentence. The district court should have asked what the basis for his appeal would be and addressed the issue on the record. Thus, even if there are cases where departure from *Bostic*'s bright-line rule could be justified based on the substantive results, we see no reason to do so here. Therefore we review Manning's sentence for reasonableness.

### B. Procedural Reasonableness

When reviewing a sentence for reasonableness, an appellate court "must first ensure that the district court committed no significant procedural error, such as failing to calculate . . . the Guidelines range, . . . failing to consider the § 3553(a) factors, . . . or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." *Gall*

*v. United States*, 128 S.Ct. 586, 597 (2007); *see also United States v. Bolds*, 511 F.3d 568, 578-81 (6th Cir. 2007) (discussing procedural-reasonableness review for sentences imposed after revocation of supervised release). Here, the district court committed at least three "significant procedural error[s]."

First, it failed to consider the appropriate Guidelines range. *See United States v. Carr*, 421 F.3d 425, 431 (6th Cir. 2005) ("Even though . . . 'the policy statements contained in Chapter Seven of the Sentencing Guidelines are merely advisory,' a court still must 'consider them prior to imposing a sentence for revocation of supervised release.'" (quoting *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999)). No Presentence Report (or Supervised Release Violation Report) was prepared, and thus we cannot presume that the district court considered the Guidelines despite failing to mention them. *See United States v. Polihonki*, 543 F.3d 318, 324-35 (6th Cir. 2008). That the parties used letter briefs on appeal to argue for the appropriate Guidelines range — with Manning arguing for a range of 6 to 12 months and the prosecution arguing for a range of 24 to 30 months — suggests that the Guidelines were never considered in the proceedings below.

Second, the district court failed to show consideration of the § 3553(a) factors. This was not merely a failure to refer to the statute or its factors by name. *See United States v. Kirchof*, 505 F.3d 409, 413 (6th Cir. 1999) (noting that there is no requirement to engage in "a rote listing or some ritualistic incantation of the factors"). Rather, it was a failure to refer directly or indirectly to any of the factors contemplated by the statute, including the overriding obligation that the sentence be "sufficient, but not greater than necessary" to comply with the statute's purposes. 18 U.S.C. § 3553(a).

Third, the court failed to give an adequate explanation of the chosen sentence. Under 18 U.S.C. § 3553(c), the "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." As noted, there is some uncertainty about which Guidelines range the court should have applied — 6 to 12 months or 24 to 30 months. The 18-month sentence falls outside either range, though, thus triggering the further requirement of § 3553(c)(2) to state the "specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment." The district court did not satisfy these obligations.

Given the scope of these procedural omissions, we are unable to conclude with certainty that they "did not affect the district court's selection of the sentence imposed," and therefore must remand for resentencing. *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quotations omitted). Furthermore, we have held that a failure to comply with the mandates of § 3553(c)(2) constitutes plain error, in addition to being significant procedural error, in part because its requirements advance the public's need to know why a particular defendant received a particular sentence. *See United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008).

We do not believe that the district court acted arbitrarily. To the contrary, the court followed a humane, individualized process in its previous encounters with Manning and undoubtedly was trying to select a sentence that was fair and reasonable. It is also possible that the district court considered the § 3553(a) factors and explained its reasoning to the parties during their call. But we are not able to review what is not in the record. We also recognize that compliance with the complicated procedural requirements listed above could have resulted in a longer sentence than the

one that Manning received (suggesting that this appeal, while "successful," may ultimately prove fruitless or even counterproductive). But, under current law, the sentencing hoops are there, and we must adhere to the procedural requirements imposed by statute and our case law, and cannot affirm an unexplained sentence simply by relying on the substantive reasonableness of, or our agreement with, the final product.

## IV. Conclusion

For these reasons, we AFFIRM the revocation of Manning's supervised release but VACATE the sentence and REMAND for further proceedings.