**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0772n.06**

**No. 10-1261**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | **Dec 16, 2010** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WALLACE MALONE, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MOORE, SUTTON and FRIEDMAN,[*] Circuit Judges.

SUTTON, Circuit Judge. The federal criminal justice system has given Wallace Malone three chances at early release from prison, one in the form of a discharge to a halfway house, the other two in the form of supervised release. Each one ended badly. After Malone violated his most recent terms of supervised release, the district court was not pleased. It sent him back to prison, imposing a two-month upward variance from an advisory guidelines range of 4 to 10 months. Malone claims that the sentence is procedurally and substantively unreasonable. We disagree and affirm.

---

[*]Daniel M. Friedman, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

I.

In 2007, Malone pled guilty to being a felon in possession of a firearm and to distributing cocaine base. The district court sentenced him to 48 months in jail and 3 years of supervised release, and later reduced the prison term to 38 months based on Congress's retroactive amendments to the crack-cocaine sentencing guidelines. Malone obtained an early release to a halfway house. But when he violated the early release conditions (by drinking alcohol), the halfway house discharged him, forcing him to return to custody to serve the rest of his prison sentence.

By August 2009, Malone had completed the prison sentence, and he began the three-year period of supervised release. Past was precedent, however. Between November and early December 2009, he violated several terms of release—by testing positive for alcohol use (November 23), failing to report for testing on three different occasions (December 1, 7, 12) and failing to attend mandatory counseling sessions (December 4)—any one of which exposed him to a revocation and return to prison. On December 16, 2009, the district court addressed the matter, and it "reluctantly" gave Malone another chance, opting not to revoke his supervised release. R.51 at 12.

Malone's third chance ended like the first two. He failed to report for substance abuse treatment on two occasions, prompting the counseling program to discharge him for lack of attendance. On January 10, 2010, police stopped Malone on suspicion of vandalism. The officer noted that Malone was "extremely intoxicated," and Malone admitted to receiving a hand laceration during a fight with his brother. Malone failed to report the police stop to his probation officer within

72 hours, as required by the terms of his release, and lied two days later when his probation officer asked if he had any encounters with the police.  Malone tested positive for alcohol and marijuana use on February 8.

The court issued an arrest warrant for Malone.  At a February 26 hearing, Malone admitted to (1) failing to report for counseling on two occasions, (2) failing to notify his probation officer within 72 hours of police contact, (3) using marijuana and (4) using alcohol.  Under these circumstances, the relevant policy statements for supervised-release violations recommend a 4–10 month range of imprisonment.  *See* U.S.S.G. § 7B1.4(a).  In view of Malone's unfortunate track record, however, the court imposed a 12-month prison sentence.

## II.

On appeal, Malone challenges the sentence as procedurally and substantively unreasonable. When reviewing sentences imposed after revocation of supervised release, as when reviewing original sentences, we assess the procedural propriety of the sentence (asking whether the court considered "the relevant statutory factors") and the substantive propriety of the sentence (asking whether it is "unreasonable").  *See United States v. Carr*, 421 F.3d 425, 429 (6th Cir. 2005).

## A.

When a defendant violates the terms of supervised release, a court may impose a prison sentence "after considering the [following] factors": (1) the nature of the offense and the history and

characteristics of the defendant; (2) the need to deter criminal conduct; (3) the need to protect the public; (4) the need to provide the defendant with appropriate treatment; (5) the relevant guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to crime victims. 18 U.S.C. § 3583(e); *United States v. Johnson*, 403 F.3d 813, 815 (6th Cir. 2005). Some factors are more relevant than others in a given case, and accordingly we do not require busy district court judges to provide a "ritualistic" one-by-one "incantation" of each factor. *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008). The question instead is whether the court provides a sufficient explanation for the sentence, one adequate for meaningful appellate review. *Id*.

The district court satisfied these modest requirements in imposing this 12-month sentence. The court addressed the nature and circumstances of the offense. It admonished Malone for "this subsequent repeat behavior pertaining to alcohol and pertaining to attendance at treatment programs." SRVH at 14–15. The court addressed the history and characteristics of the defendant. It noted that "you're not 18, you're 25," then asked rhetorically, "Well, let's find out how much you've learned. In December . . . the Court was given a report which said, Don't violate him, Judge, but he used alcohol and he failed to attend the substance abuse classes. . . . So we didn't learn from that, did we?" *Id.* at 12, 14–15. The court addressed the need to deter future criminal conduct. "[I]t's obvious," the court explained, "that the inability of these supervised release characteristics to turn this situation around . . . have to have consequences." *Id.* at 15.

The court considered the importance of providing Malone with medical care and other

treatment. It ordered that Malone be "provided with alcohol abuse treatment within the institutional setting," explaining that "perhaps it will be a better help there in this matter . . . . so we have a setting where there will be less stress and more structure, and we will be on better footing than we apparently are on now." *Id.* at 15. And the court, we can presume, considered the relevant policy statements for supervised-release violations. At the time of his revocation hearing, the record contained Malone's "supervised release violation report," which spelled out the advisory range. "[I]n some cases a district court's statements reflect consideration of the [report] without express reference to [it]," because, by reviewing the report, "the court is presumed to have considered the recommended sentencing range." *United States v. Polihonki*, 543 F.3d 318, 324 (6th Cir. 2008). That was the case here, as the court's interrogation of Malone shows it was plenty familiar with, and quite disappointed by, the report.

All of this leaves two potential gaps in the sentencing factors mentioned at the hearing. The court never mentioned the need to provide restitution to crime victims or the need to avoid unwarranted sentencing disparities. Yet there was no restitution to speak of because the only victim of these violations (aside from the rule of law) was Malone himself. As for unwarranted sentencing disparities, no such problem is apt to arise in the context of within-guidelines sentences, *cf. United States v. Kirchhof*, 505 F.3d 409, 416 (6th Cir. 2007), and a modest two-month upward variance for repeated supervised-release violations may lead to disparities but not unwarranted ones.

On this record, the district court provided a sufficiently "reasoned basis" for its decision. *Rita v. United States*, 551 U.S. 338, 356 (2007). Although a judge could always say more and we

agree with our dissenting colleague that this judge would have done well to say more, the "brevity

or length, conciseness or detail," of the court's explanation "depends upon circumstances" and the

"judge's own professional judgment." *Id.* In Malone's case, there was not a lot to say given

Malone's past failures with prison release and the unfortunate prologue that this history provided to

the hearing. The same district judge had dealt with Malone on two prior occasions: first, when the

judge sentenced Malone to 48 months for his felony conviction, interrupted by a failed early release

to a halfway house; then, when the judge passed on the opportunity to revoke Malone's supervised

release, despite multiple violations, giving Malone a second chance. By the time of the third

encounter, when Malone appeared for his revocation hearing, the key issue for discussion was

Malone's recidivist ways and what to do about them. And that was precisely what the district court

focused on in justifying the 12-month sentence. Because "the amount of reasoning" expected of

sentencing judges "varies according to context," *United States v. Jeross*, 521 F.3d 562, 582–83 (6th

Cir. 2008), we cannot read a sentencing transcript in a vacuum. The key context here, indeed the

outcome-determinative context, was the judge's familiarity with Malone's inability to cope with his

addictions and life outside prison walls.

Any doubt on this score is confirmed by how little *the defendant* had to say before the hearing

or at it. Malone did not respond to or otherwise object to the supervised release violation report.

And he did not deny the problems underlying the violations, the repeated nature of the violations or

the need for the court to respond firmly to them. In his counsel's words: "His problem is he needs

to commit himself to a course of treatment that's not deterred by outside forces such as loss of

transportation or friends who use and who don't have his best interests at heart. He realizes the need for treatment. We recognize there's going to be punishment for his having fallen off track here. The Court gave him a break in December, and he didn't take . . . good advantage of that." SRVH at 11. His counsel made no plea for leniency before the court issued its decision or otherwise explained why the kind of sentence the court ultimately imposed should not have been imposed. To the contrary: the hearing transcript suggests that all of the participants appreciated that the repeated nature of the violations was going to warrant (relatively speaking) a stiff sentence.

It is true that, *after* the district court imposed a 12-month sentence, Malone asked the court to impose a sentence of 12 months and 1 day, apparently because that would allow Malone to earn good-time credits, and the district court never responded to the request. But Malone cites no authority for the proposition that district courts must respond to requests for *longer* sentences, least of all requests made *after* the court imposes a sentence, and we are aware of none. A sentencing judge has no duty to "discuss every argument made by a litigant"; clearly meritless arguments can and should be "passed over in silence." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006).

Our colleague raises a few additional concerns in dissent. But we respectfully do not think they change the outcome. The dissent invokes § 3553(c)(2) of Title 18, which requires a court to explain the "specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment." 18 U.S.C. §

3553(c)(2), *amended by* Pub. L. No. 111-174 (May 27, 2010). The defendant, first of all, made no mention of § 3553(c)(2) on appeal, and accordingly he has forfeited the argument.

The point, second of all, makes no difference here. No one in this case questions the reality that, after *Booker*, a trial court must "adequately explain the chosen sentence—including the explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Nor does anyone question the reality that, after *Booker*, the trial should "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. As shown, the trial judge satisfied these requirements in imposing this modest two-month variance.

Last of all, to the extent there is a setting in which § 3553(c)(2) might affect the outcome of a case, it is less likely to be in the context of stating reasons for a variance and more likely to be in the context of whether those "reasons must also be stated with specificity in the written order of judgment," an argument not raised by anyone here. As to that point, it is by no means clear that § 3553(c)(2) applies to supervised release violations, as opposed to initial sentences.

Congress intended the sentencing guidelines, as originally enacted, to be mandatory for most crimes, but it never intended the sentencing ranges provided by Chapter 7 of the guidelines, which deals with "Probation and Supervised Release Violations," to be mandatory. *See United States v. Sparks*, 19 F.3d 1099, 1101–02 & n.3 (6th Cir. 1994). Instead, Chapter 7 "fulfill[ed] a special advisory role" to ensure "greater flexibility" for revocation proceedings as compared to regular

sentencings. *Id.* at 1101 n.3. Although the remedial portion of *Booker* made the guidelines advisory and suddenly made § 3553(c) applicable to all deviations from traditional guidelines ranges, whether variances or departures, *see United States v. Booker*, 543 U.S. 220, 261 (2005), it is not clear that it suddenly made § 3553(c)(2) applicable to supervised-release violations.

Another oddity about applying § 3553(c)(2) in this setting is that § 3583, the "supervised release statute," *see United States v. Gilpatrick*, 548 F.3d 479, 483 (6th Cir. 2008), says nothing about such a requirement. *See* 18 U.S.C. § 3583(e). Section 3583(e) incorporates several subsections of § 3553 as appropriate for consideration in revoking a term of release but conspicuously omits § 3553(c)(2). *Id.* Because it is § 3583 that empowers a district court to revoke a term of supervised release and because it is that section that explains the procedures for doing so, the failure to incorporate § 3553(c)(2) fairly makes one wonder whether it applies to supervised-release violations.

Two circuits have issued reasoned published holdings on the point. Before *Booker* and after it, the Eighth Circuit has held that § 3553(c)(2) does not apply to supervised-release violations. *United States v. Cotton*, 399 F.3d 913, 915–16 (8th Cir. 2005); *United States v. White Face*, 383 F.3d 733, 738–39 (8th Cir. 2004); *see also United States v. Garner*, 133 F. App'x 319, 320–21 (7th Cir. 2005) (holding that § 3553(c) does not apply to supervised release revocations because "by its terms § 3553(c) applies only to sentencing" and because § 3583 and Criminal Rule 32.1 do not reference § 3553(c)(2)). The Ninth Circuit, by contrast, holds that § 3553(c)(2) applies in this setting. *See*

*United States v. Miqbel*, 444 F.3d 1173, 1177–78 (9th Cir. 2006). As the Ninth Circuit sees it, § 3553(c)(2) refers to, among other provisions, § 3553(a)(4), which talks about "violation[s] of . . . supervised release," and that suffices to impose the same reason-giving and written-order-of-judgment requirements on supervised-release hearings. *Id.* That may or may not be right, though it bears noting that the prefatory language in § 3553(a)(4) ("the kinds of sentence and the sentencing range established for") and the language in § 3553(c)(2) ("is not of the kind, or is outside the range") naturally connect only to the language of § 3553(a)(4)(A), which used to provide mandatory sentences, not to the language of § 3553(a)(4)(B), which is the subsection dealing with supervised release and which has always been advisory.

Whether the Eighth Circuit or the Ninth Circuit is right makes no difference today, and accordingly we need not resolve the point. Either way, a district court must give sufficient reasons for its sentence to allow for appellate review, as all three of us agree. The dispositive point today is whether the district court abused its discretion in giving those reasons here. On appeal, Malone concedes that a within-guidelines sentence would have been reasonable, which is to say a sentence up to ten months. Malone's Br. at 15. What his complaint comes down to, then, is whether the district court adequately explained why 12 months, rather than 10 months, was appropriate. Yet everything the court said in explaining the sentence, as chronicled earlier, justified a 12-month sentence *and* sufficed to explain why two months above the guidelines was appropriate. Under these circumstances, the failure of the court to add an explicit coda—to the effect that all of this justified a variance of two months—does not amount to reversible error.

A recent precedent illustrates the other side of the coin. In *United States v. Peebles*, we reversed a 10-month sentence imposed for a supervised-release violation on procedural-reasonableness grounds. *See* 624 F.3d 344 (6th Cir. 2010). There, the district court not only failed to address the policy statement range and not only failed to explain its variance, but by the time the case came to our court it also remained unclear what the proper range was. *Id.* at 346–47. *Peebles* thus was a case in which the appellate court could not even tell which range, among several competing options, the district court had invoked before sentencing the defendant, making it appropriate to treat the court's cursory explanations for the sentence as reversible error. The same is not true here.

## B.

The court's sentence also is substantively reasonable, which is to say not too long under the "totality of the circumstances." *Gall v. United States*, 552 U.S. 38, 51 (2007). Malone's serial violations and his failure to be straight with his probation officer gave the district court ample discretion to add two months to the top of the advisory guidelines range.

We have affirmed similar upward variances before in this setting, and we see no reason not to do so here. What was said in one case could be said with equal truth here: A two-month addition to the advisory guidelines range is necessary to get the defendant's "attention" and to "end his cycle of self-destructive behavior." *Polihonki*, 543 F.3d at 326. The same goes for another case affirming a two-month upward variance: "[T]he district court had twice given [the defendant] 'a break': at

the first revocation hearing by allowing him, despite multiple violations, to continue with supervised release, and at the second hearing by imposing a short prison term. That the third revocation hearing prompted the district court to impose a modest variance—just two months over the top of the advisory guidelines range—is patently reasonable." *United States v. Morrow*, 207 F. App'x. 591, 593 (6th Cir. 2006); *see also United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (affirming ten-month upward variance when defendant tested positive for drugs and failed to report to his treatment program); *Johnson*, 403 F.3d at 817 (affirming eight-month upward variance when defendant had violated his release terms, forged documents and lied to his probation officer).

Malone responds that the sentence is "greater than necessary" given that his "limited" drug use occurred at a Super Bowl party. Malone Br. at 12–15. But why is that exculpatory? Does anyone realistically think a "mine-run," *id.* at 12, Super Bowl party is the kind of place where Malone should have been if he is trying to break free from the ruthless grip of alcoholism? More to the point, the call is not ours to make. We must give district courts "due deference" in making these decisions, *Gall*, 552 U.S. at 51, and it is difficult to say that a recidivist supervised-release violator, like Malone, *must* receive a less-than-twelve-month sentence.

III.

For these reasons, we affirm.

No. 10-1261
*United States v. Malone*

**KAREN NELSON MOORE, Circuit Judge, dissenting.** The primary legal issue in this appeal is quite simple: when a district court sentences a defendant to a term of imprisonment that is above the recommended guidelines range, must it explain its reason for doing so? Congress and the Supreme Court have both said yes, *see* 18 U.S.C. § 3553(c)(2); *Gall v. United States*, 552 U.S. 38, 51 (2007), as has this circuit, *see United States v. Grams*, 566 F.3d 683 (6th Cir. 2009); *United States v. Blackie*, 548 F.3d 395 (6th Cir. 2008); *see also United States v. Peebles*, -- F.3d. --, 2010 WL 4352284 (6th Cir. 2010) (remanding for failure to calculate and address the guidelines range); *United States v. Barahona-Montenegro*, 565 F.3d 980 (6th Cir. 2009) (remanding for failure to calculate the guidelines range and explain the sentence). Because the district court has failed to state why it imposed an above-guidelines sentence, the application of the law to the facts of this case cannot be debated. The majority, however, affirms nonetheless. I respectfully dissent.

A district court must explain why it has chosen a particular sentence, 18 U.S.C. § 3553(c), and, if that sentence is outside the recommended guidelines range, the court must also state "the specific reason for the imposition of a sentence different from that described [in the guidelines,]" 18 U.S.C. § 3553(c)(2). Failure to "adequately explain the chosen sentence—including an explanation for any deviation from the guidelines" is a clear procedural error. *Gall*, 552 U.S. at 51; *see also Blackie*, 548 F.3d at 400–01 ("A sentence imposed without complying with the requirements of § 3553(c) constitutes error."); *Grams*, 566 F.3d at 685–88.

- 13 -

We have recognized that a district court's explanation of its sentence permits "meaningful appellate review and the perception of a fair sentence." *Blackie*, 548 F.3d at 401 (citing *Gall*, 552 U.S. at 50). In this case, however, review of the district court's explanation is not possible because the district court did not give any explanation. It said absolutely nothing about why it was sentencing above the guidelines range. Indeed, we can only presume that the district court even considered the guidelines range because the court also failed to mention that. And although the majority believes that the twelve-month sentence included a "modest two-month variance," Majority Opinion at 8, nothing in the record indicates that a variance was either on the mind or the tongue of the district judge. Clearly the district court did not comply with § 3553(c)(2), which constitutes reversible error. *See Blackie*, 548 F.3d at 400–01; *Grams*, 566 F.3d at 685–88.

Furthermore, the plain language of the statute provides that § 3553(c)(2) applies to supervised-release-revocation hearings. Congress explicitly applied § 3553(c)(2) to supervised-release-revocation proceedings by requiring an explanation for sentences that are "not of the kind, or [are] outside the range, described in subsection (a)(4)." 18 U.S.C. § 3553(c)(2). Subsection (a)(4), in turn, explicitly includes sentences for supervised-release violations and acknowledges that such violations have "applicable guidelines or policy statements issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4)(B). The plain statutory language thus applies § 3553(c)(2) to supervised-release-revocation proceedings.

This circuit has previously applied § 3553(c)(2) to supervised-release-revocation proceedings. *See United States v. Johnson*, 356 F. App'x 785, 793–95 (6th Cir. 2009) (unpublished opinion); *United States v. Manning*, 317 F. App'x 517, 523–24 (6th Cir. 2009) (unpublished opinion). At least six other circuits have done so, as well. *See United States v. Miqbel*, 444 F.3d 1173, 1177–78 (9th Cir. 2006) (holding that § 3553(c)(2) applies to supervised-release-revocation proceedings); *United States v. Lewis*, 424 F.3d 239, 244–45 (2d Cir. 2005) (same); *United States v. Whitelaw*, 580 F.3d 256, 261–62 (5th Cir. 2009) (holding that failure to comply with § 3553(c)(2) in a supervised-release proceeding constitutes error); *In re Sealed Case*, 527 F.3d 188, 193 (D.C. Cir. 2008) (same); *United States v. Tedford*, 92 F. App'x 738, 740 (10th Cir. 2004) (unpublished order) (same); *see also United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006) (applying § 3553(c)(2) to probation-revocation proceedings). The 1994 amendments to § 3553(a)(4) support this approach, because Congress explicitly added supervised-release proceedings and their corresponding guidelines and policy statements to subsection (a)(4) while leaving § 3553(c)(2)—and its connection to "subsection (a)(4)"—unchanged. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103–322, Title XXVIII, § 280001, 108 Stat. 1796, 2095–96 (1994).

The two cases from the Eighth Circuit are distinguishable, because in those cases that court was considering a different question from the one presented here: whether § 3553(c)(2)'s requirement of a *written* statement of reasons for any sentence outside the guidelines range applies in supervised-release-revocation proceedings. *See United States v. Cotton*, 399 F.3d 913, 916 (8th Cir. 2005); *United States v. White Face*, 383 F.3d 733, 738–39 (8th Cir. 2004). In fact, in *Cotton*,

the district court clearly *did* give "the specific reason" for exceeding the guidelines at the hearing; its only failing was in regards to the written-statement requirement. *Cotton*, 399 F.3d at 915 (noting that the district court stated "I've exceeded the guidelines for four reasons," and provided those reasons). And in the context of a regular sentencing hearing, this circuit has recognized that a failure to comply with the written-statement requirement will not result in reversible error so long as the district court provides an oral explanation for an above-guidelines sentence. *United States v. Williams*, No. 08-6409, 2010 WL 3724594, at *5 (6th Cir. Sept. 13, 2010) (unpublished opinion). This is because the oral statement sufficiently provides for the perception of a fair sentence and for meaningful appellate review, *id.*, neither of which can be said of the sentence here. Lastly, it is true that the Seventh Circuit, in an unpublished, two-page order on a motion to withdraw as counsel under *Anders v. California*, 386 U.S. 738 (1967), held that § 3553(c)(2) does not apply to supervised-release-revocation proceedings. *United States v. Garner*, 133 F. App'x 319, 320–21 (7th Cir. 2005) (unpublished order). But given § 3553(c)(2)'s clear text, I do not find that court's brief explanation persuasive. I also find it noteworthy that the *Garner* court relied, in part, on the fact that no other circuit at that time—just four months after *Booker* was decided—had reached the opposite conclusion. *Id.* The cases mentioned above, however, show this reliance to have been misplaced.

Any suggestion regarding what has been omitted from § 3583(e) is unpersuasive. Section 3583(e) permits revocation of supervised release only after the court has considered most, but not all, of the factors listed in § 3553(a). Section 3583(e) provides that the court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and

(a)(7)," terminate, extend, or revoke a term of supervised release, or order the defendant to be placed on home confinement. 18 U.S.C. § 3583(e). Clearly this list contains only § 3553(a) factors, and it relates only to what the court must *consider* and what types of sanctions the court may *impose*; this provision has nothing to do with what the court must *explain*. But this is not surprising given that § 3553(c) already addresses what a sentencing court must explain at supervised-release-revocation proceedings. Frankly, to derive meaning from the fact that § 3553(c)(2) was not mentioned in § 3583(e) implies a belief that Congress needed to enact § 3553(c)(2) twice before the section can apply once.

Nonetheless, the fact that Congress individually listed so many of the § 3553(a) factors in § 3583(e) does raise the question: what *has* been omitted from this list? Subtracting "section[s] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" from § 3553(a) reveals the answer: subsections (a)(2)(A) and (a)(3). And the content of these subsections demonstrates why they were omitted from § 3583(e).

The first, subsection (a)(2)(A), provides for consideration of the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). But as the Ninth Circuit explained in *Miqbel*, subsection (a)(2)(A)'s focus on the "seriousness of the offense" and providing "just punishment for the offense" makes the subsection inappropriate for consideration in a supervised-release-revocation proceeding. *Miqbel*, 444 F.3d at 1181–82. Primarily, this is because the

Sentencing Commission has made clear that the revocation of a defendant's term of supervised release is conceptually different from the punishment provided for criminal conduct; the former is properly understood as a "breach of trust" while the latter can result in a sanction only following a conviction in a separate criminal proceeding. *Id.* at 1182 (citing U.S. SENTENCING GUIDELINES MANUAL, Ch. 7, Pt. A (2004)). As a result, where a defendant's conduct constitutes both a violation of a supervised-release condition and a separate criminal offense, the court in a supervised-release proceeding should remain focused on imposing a sanction for the "breach of trust," and should not consider the need to do what subsection (a)(2)(A) calls for—providing "punishment for the offense." *Id.*

The second omitted provision, subsection (a)(3), provides for consideration of "the kinds of sentences available." It would have been superfluous to have required the court in a supervised-release proceeding to consider this factor, however, because "the kinds of sentences available" in a supervised-release proceeding are listed in § 3583(e), itself. After considering the listed § 3553(a) factors, the court may, depending on the context, "(1) terminate a term of supervised release . . .; (2) extend a term of supervised release . . . and . . . modify, reduce, or enlarge the conditions of supervised release . . .; (3) revoke a term of supervised release . . .; or (4) order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices[.]" 18 U.S.C. § 3583(e)(1)–(4). It is therefore quite understandable that Congress would have omitted subsection (a)(3), along with

subsection (a)(2)(A), from the list of factors a court must consider in a supervised-release proceeding.

Malone argues that the district court "failed to adequately explain . . . why a sentence above the guideline range was necessary." Malone Br. at 10; *see also id.* at 11–12. Because the district court did not give any indication that it knew of the recommended sentencing range or intended to impose an upward variance, much less an explanation of why it imposed a sentence above the recommended sentencing range, we cannot conduct meaningful appellate review and we must remand for resentencing.

With respect to the district court's treatment of Malone's request for a year-and-a-day sentence, the district court not only failed to provide an explanation in response to that request, but also importantly the district court did not permit Malone's attorney even to finish his request, thereby demonstrating an unwillingness to consider the argument. The entire exchange was as follows:

> [Malone's attorney]: Your Honor, would the Court consider 12 months and one day to make him eligible for—
>
> The Court: I think 12 months is just fine. Thank you.

R.52 at 15–16. Even though "arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence," *United States v. Smith*, 510 F.3d 603, 608 (6th Cir. 2007) (internal quotation marks omitted), this was not such an argument. The requested sentence

of one year and one day would have been to Malone's benefit because the extra day would have made Malone eligible for good-time credit under 18 U.S.C. § 3624(b)(1). It would also have provided an incentive for good behavior in prison. *See Barber v. Thomas*, -- U.S. --, 130 S. Ct. 2499, 2505 (2010). It is therefore clearly a non-frivolous argument, deserving consideration and discussion by the district court. *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("When, on appeal, a defendant's argument and supporting evidence presents an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate.").

I would vacate and remand for resentencing, and, therefore, respectfully dissent.