NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0333n.06

Case No. 15-5794

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 17, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MIGUEL DAVID AYALA, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: BATCHELDER, MOORE, McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Miguel David Ayala violated his conditions of supervised release three times, squandering the district court's repeated efforts to send him to treatment instead of prison. After Ayala's third strike, the district court revoked his supervised release and imposed the statutory maximum 24-month sentence. Ayala claims the sentence is procedurally unreasonable. We disagree and AFFIRM the sentencing decision of the district court.

**I**

Miguel David Ayala has an extensive criminal record including several felonies and numerous misdemeanors. As a result of pleading guilty to aiding and abetting a bank robbery, Ayala was sentenced to 78 months of imprisonment and supervised release of three years. Ayala completed his prison sentence and was released in 2014. He soon began violating conditions of

his supervised release (using alcohol, failing to secure employment, failing to pay restitution) and was then arrested for drunk driving, assault, fleeing and evading, and wanton endangerment. Pending the resolution of these state court charges, the district court held a revocation hearing and, instead of revoking his supervised release, modified Ayala's conditions to include six months of substance abuse treatment and mental health counseling.

After only one month of treatment, the facility terminated Ayala from the program after repeated violations of the facility's regulations. Ayala then pleaded guilty to an underlying state court felony and was transferred to federal custody. On May 19, 2015, Ayala faced his second revocation hearing where he admitted continued violations of his supervised release— committing a crime, using alcohol, and, most notably, failing to complete his substance abuse treatment program. Even then, the district court was not without patience. After thoroughly discussing the basis for Ayala's termination from the treatment facility, the court discussed Ayala's request to again be placed in a treatment facility instead of prison. Admittedly concerned that Ayala had "so cavalierly rejected" the requirement that he complete treatment, the court gave Ayala a final chance to avoid revocation, modifying his conditions to permit re-enrollment in a different treatment facility. This leniency was not without cost—the court warned Ayala that getting himself "kicked out" of the treatment facility would result in a swift return to prison. When asked whether Ayala understood the seriousness of this promise, he responded: "[It is] crystal clear, sir, I understand. Failure is not an option any more for me." R. 333, May Hr'g Tr., PID 886.

But Ayala could not follow through with his end of the bargain. After only one month at the new facility—the same duration as his previous stint in rehab—Ayala *voluntarily* left the program without permission from his probation officer or the court. This led to his arrest and a

*third* revocation hearing on July 20, 2015, a mere two months after his second revocation hearing before the same sentencing judge. Ayala explained that his departure was triggered by the facility's internal policy to not provide his specific bi-polar medication; the denial of medication reportedly resulted in withdrawal symptoms and exacerbated his unstable mental state. Nonetheless, Ayala acknowledged his mistake before the district court: "I know that you gave me a break, I know that you did and I really appreciate that, and you made it perfectly clear what would happen should I not complete the program[.]" R. 334, July Hr'g Tr.,PID 921. Ayala's counsel asked for a sentence within the Guidelines range of 8–14 months, but also stated that he "specifically recollect[ed]" the district court "telling my client and me that if he did violate your order, you would sentence him to the statutory maximum of two years." R. 334, July Hr'g Tr., PID 920.

After hearing counsel's arguments and listening to Ayala's allocution, the district court reminded Ayala: "I told you when you were here the last time that this was your last chance and that if you didn't complete the program I was going to give you the statutory maximum [of 24-months]." R. 334, July Hr'g Tr., PID 922–23. The court continued, "[y]ou know, that's a serious promise, and I expected you to complete the program. I didn't expect you to walk out." *Id.* at 923. Though Ayala's Supervised Release Violation Report ("Violation Report") recommended an 8–14 month sentence, Ayala's persistently disastrous track record led the court to impose the statutory maximum 24-month sentence. The court recommended that Ayala be incarcerated in a correctional facility with polysubstance abuse and mental health programs, and directed Ayala to receive mental health and substance abuse treatment. When asked if there were questions or objections, both Ayala and his counsel responded that they had none.

**II**

Ayala challenges only the procedural reasonableness of his sentence, alleging that the district court (1) failed to refer to the recommended Guidelines range set forth in the Violation Report and offered little explanation for sentencing in excess of that range; and (2) failed to address his mitigating argument that he left treatment because the facility did not provide his bi-polar medication.

As Ayala did not raise any objections to his 24-month sentence at the conclusion of his revocation hearing, we are constrained to review only for "plain error." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (internal citation and quotation marks omitted). Reversal for plain error is limited to "exceptional circumstances," *Vonner*, 516 F.3d at 386, and the defendant has the burden to "show (1) there is error; (2) the error was 'clear or obvious rather than subject to reasonable dispute'; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

**1. Consideration of the Guidelines Range and § 3553(a) factors**

Ayala complains that the district court did not adequately explain its reasons for imposing his sentence or explicitly refer to his Guidelines range. A court may impose a prison sentence for violation of the terms of supervised release "after considering [various] factors" including: "the nature of the offense [and the history and characteristics of the defendant]; the need to deter criminal conduct, to protect the public, and to provide Defendant with appropriate treatment; any guideline range for sentencing; guideline policy statements; and avoidance of unwarranted disparities." *United States v. Johnson*, 403 F.3d 813, 815 (6th Cir. 2005); *see* 18 U.S.C.

§ 3583(e) (referring to consideration of § 3553(a) factors in modifying supervised release). As some factors are more relevant than others in any given case, we have consistently held that a "ritual incantation" of each factor is unnecessary to affirm a district court's sentence. *Johnson*, 403 F.3d at 816; *see also United States v. Denny*, 653 F.3d 415, 424 (6th Cir. 2011). Rather, our modest inquiry is only whether a district court's sentencing explanation is sufficient to "permit meaningful appellate review." *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009).

In considering the history between the sentencing judge and defendant Ayala, involving several encounters in a relatively short period, we are satisfied that the district court met this standard. Addressing the nature and circumstances of the offense, the court referred to Ayala's previous failure to complete treatment, noting "help is something we have tried to give you." R. 334, July Hr'g Tr., PID 922. The court also discussed Ayala's history and characteristics when it acknowledged that "you just don't want . . . to abide by the programs' requirements, and you are not going to get any better until you learn to do that." *Id.* at 922. Further, at Ayala's prior revocation hearing, the court discussed Ayala's age (37), and expressed concern that his repeated interactions with the justice systems could "find [him] standing in front of [the district court] or some other judge the rest of [his] life." R. 333, May Hr'g Tr., PID 885. *See United States v. Mendez*, 498 F.3d 423, 428 (6th Cir. 2007) (examining the explanation furnished at an original sentencing hearing to determine adequacy of the court's subsequent sentencing explanation). Obviously cognizant of Ayala's repeated violation of his conditions, the court also addressed the need to deter future criminal conduct by revoking his supervised release and placing him a in federal correctional facility. Finally, the court took care to "provide the defendant with [other] needed . . . correctional treatment," § 3553(a)(2)(D), by ensuring he would be incarcerated at a "polysubstance abuse and mental health facility" in what amounts to the *fourth* time the district

court took active steps to ensure Ayala received treatment. R. 334, July Hr'g Tr., PID 922. To the extent Ayala argues the court did not allege the "specific reason" for varying from the Guidelines, *see* § 3553(c)(2), he ignores the court's consistent leniency and repeated efforts to encourage treatment in lieu of prison time and reneges on his professed "crystal clear" understanding of what would happen if he failed to complete treatment.

While we have on occasion found a district court's failure to expressly identify the applicable advisory Guidelines range to be reversible error, *see United States v. Blackie*, 548 F.3d 395, 400–01 (6th Cir. 2008), here the Guidelines range was not totally absent from the revocation hearing. The Violation Report contained Ayala's range and was indisputably before the district court; Ayala never argued that the court failed to consider it at any stage in the revocation proceeding. In such circumstances, we have held a "district court's statements reflect consideration of the [Violation Report's Guidelines range] without express reference to the report." *United States v. Polihonki*, 543 F.3d 318, 324 (6th Cir. 2008); *see also United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (finding that the "court is presumed to have considered the recommended sentencing range set forth in the policy statements"); *United States v. Malone*, 404 F. App'x 964, 966 (6th Cir. 2010). Here, the court's reference to Ayala's repeated failures to comply with the conditions of his supervised release "shows it was plenty familiar with, and quite disappointed by, the report." *Malone*, 404 F. App'x at 966.[1]

Because the record reflects appropriate consideration of several relevant § 3553(a) sentencing factors and reaffirms the court's interest in ensuring Ayala receive mental health treatment (albeit, now while incarcerated), we discern a "reasoned basis" for the court's decision,

---

[1] We also note that Ayala's defense counsel discussed the Violation Report's Guidelines recommendation of 8–14 months during the final revocation hearing. R. 334, July Revocation Hearing, PID 920.

*Rita v. United States*, 551 U.S. 338, 356 (2007), and hold the court did not commit plain error in imposing Ayala's sentence.

### 2. Consideration of Ayala's Mitigating Argument

Ayala  also contends that the district court erred by not addressing his mitigating argument that "he left the treatment program because they failed to give him his medication, which in turn caused problems with his mental health issues." Ayala Br. at 14. In essence, Ayala suggests that the court's failure to directly reject his argument indicates that the court failed to consider it when imposing his sentence. But the record makes clear that this factor was well within the court's contemplation during sentencing; defense counsel cross-examined a counselor at the rehabilitation facility who testified that Ayala's bi-polar disorder medication was on the facility's "cannot take list." R. 334, July Rev. Hr'g Tr., PID 899–907. Further, Ayala referred to the change in his medicated status several times at the hearing and noted that he "struggled on a daily basis" as a result.

"District courts may exercise discretion in determining how much of an explanation of the sentence is required because the amount of reasoning required varies according to context." *United States v. Jeross*, 521 F.3d 562, 582–83 (6th Cir. 2008) (internal citation and quotation marks omitted). Where the defendant presents arguments that are "conceptually straightforward," *Vonner*, 516 F.3d at 388, "we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument." *Simmons*, 587 F.3d at 361; *see also Polihonki*, 543 F.3d at 325 ("This court has made it clear that a district court need not explain its reasons for rejecting each argument made by a defendant.") (quoting *United States v. Smith*, 510 F.3d 603, 608 (6th Cir. 2007)). Because Ayala's mitigating argument was straightforward and obviously present throughout the revocation hearing, it did not necessitate a

direct response and rejection from the district court. While the district court could certainly have said more, Ayala's supervised release violations, inability to complete treatment, and mental health concerns had been at the forefront of the sentencing judge's mind over the course of *three* revocation hearings during a span of just over one year. There simply wasn't much left to say.

Ayala's professed concern over the district court's brevity is belied by how little he had to say about the matter at sentencing. Ayala did not object to the Violation Report or otherwise respond to it; he did not deny the problems underlying his repeated violations of his conditions, nor did he argue against the need for the court to respond to them. We see no mystery here. All of the parties understood that Ayala's failure to complete the second program was the proverbial straw that would break the camel's back—an outcome that would result in sentencing in accordance with the statutory maximum.[2]

For these reasons, even if we concluded the district court's admittedly sparse explanation amounted to clear error, Ayala would still fail to carry his burden under the third prong of plain error review "because he cannot show prejudice." *United States v. Gabbard*, 586 F.3d 1046, 1051 (6th Cir. 2009) (citing *United States v. White*, 563 F.3d 184, 197 (6th Cir. 2009)). "The prejudice in an adequacy-of-explanation challenge comes from the inference that the district court would have reached a different sentence if it had reasoned properly." *Id.* Though we ultimately find no reversible defect in the district court's explanation, Ayala is, in any event, unable to persuade us that remanding for further discussion of issues already considered in multiple revocation hearings would lead to a different sentence. Therefore, any alleged

---

[2] *See* R. 334, July Rev. Hr'g Tr., PID 921–22 (Ayala: "you made it perfectly clear what would happen should I not complete the program[.]"; Defense Counsel: "I specifically recollect standing in this courtroom a short time ago, you telling my client and me that if he did violate your order, you would sentence him to the statutory maximum of two years.")

procedural defect did not affect the outcome or the fairness of the proceedings, a necessary prerequisite for relief under plain error review. *Massey*, 663 F.3d at 856.

## III

For the reasons above, we hold that the district court's imposition of Ayala's sentence was not procedurally unreasonable and therefore AFFIRM.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I would hold that the district court plainly erred by not identifying the applicable Guidelines range and by not explaining why Miguel Ayala's conduct warranted a term of imprisonment almost twice as long as the high end of that range. I would further hold that, in sentencing Ayala for leaving a drug rehabilitation facility, the district court plainly erred by not responding to Ayala's argument that he left the facility only because it would not allow him to take his bipolar medication.

18 U.S.C. § 3553(c)(2) requires a district court to state its reasons for a sentence "with specificity." We have interpreted § 3553(c)(2) to mean that a district court must both identify the applicable Guidelines range and offer a reasoned explanation for its sentence. *United States v. Blackie*, 548 F.3d 395, 401–02 (6th Cir. 2008). Here, the district court did neither. At the May hearing, the district court told Ayala that it would sentence him to the statutory maximum if he left the rehabilitation facility. R. 333 (May 19, 2015 Hr'g Tr. at 17–19) (Page ID #885–87). And at the July hearing, the district court did exactly that. R. 334 (July 20, 2015 Hr'g Tr. at 34–36) (Page ID #922–24). But at neither hearing did the district court acknowledge Ayala's Guidelines range of 8–14 months of imprisonment or explain why Ayala's decision not to complete the treatment program deserved a sentence almost twice the high end of that range. The only justification that the district court offered for Ayala's twenty-four month sentence was that the court had previously *said* it would impose a twenty-four month sentence. *Id.* This is far from sufficient. The district court's failure to comply with the clear dictates of § 3553(c)(2) constitutes plain error. *Blackie*, 548 F.3d at 401–02.

The district court also did not address Ayala's argument that he left the rehabilitation facility because the facility would not allow him to take his bipolar medication. "'When a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must

reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (alterations omitted) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)). The record does not reflect either here. Although Ayala raised the issue at the July hearing, and although one of the counselors from the rehabilitation facility testified that Ayala was not allowed to bring his bipolar medication into the facility, R. 334 (July 20, 2015 Hr'g Tr. at 18) (Page ID #906), the district court never responded to Ayala's argument. This is plain error. *Wallace*, 597 F.3d at 803–05.

These errors deprived Ayala of his right to meaningful appellate review. *See United States v. Cabrera*, 811 F.3d 801, 813 (6th Cir. 2016) ("A district judge *must comply* with § 3553(c) in order to afford a defendant the right to meaningful appellate review—i.e., to create a record for appeal that adequately discloses the judge's reasons for sentencing a defendant." (emphasis in original)); *see also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). The majority is wrong in requiring Ayala additionally to show prejudice. Maj. Op. at 8–9. We have repeatedly held that a defendant's right to meaningful appellate review is a *substantial* one. *Cabrera*, 811 F.3d at 813 (identifying "the right to meaningful appellate review" as "a substantial right that does not require a showing of prejudice"); *Wallace*, 597 F.3d at 807 (recognizing "that § 3553(c) generally implicates a 'substantial right' . . . to meaningful appellate review"): *Blackie*, 548 F.3d at 403 (joining other circuits "in finding that § 3553(c)(2) confers a *substantial* right to meaningful appellate review" (emphasis in original)). Ayala need not show that the district court would have imposed a different sentence had it not committed

these errors. *See* Maj. Op. at 8–9. Ayala need show only that the errors deprived him of his right to meaningful appellate review, which he has done. Accordingly, I would vacate Ayala's sentence and remand this case to the district court for resentencing. The majority seeing things differently, I respectfully dissent.