**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0113n.06

**No. 13-3713**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 06, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RHADA M. SMITH,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

---

**BEFORE:** DAUGHTREY, CLAY, and COOK, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Rhada Smith appeals from her conviction and sentence for one count of conspiracy to utter or possess counterfeit checks and to commit bank fraud, in violation of 18 U.S.C. § 371. Smith argues that her trial counsel provided ineffective assistance, the government's delay in bringing the indictment violated her right to due process, and the district court improperly excluded a jury instruction on her good faith defense. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

In 2006, investigators from National City Bank ("National City") detected a suspicious pattern of activity in which checks purportedly issued by certain businesses were deposited into National City accounts via ATM and the funds withdrawn from those accounts before the checks cleared. National City alerted the U.S. Postal Inspection Service and the Secret Service. The

federal law enforcement officers investigated the suspicious activity and determined that a group of African men were engaged in a scheme in which they produced or obtained counterfeit checks and then recruited individuals to provide their bank account information and turn over their debit cards to facilitate deposit of the forged instruments. Within a few days of the deposits, the account holders were taken to various branch locations to make in-person cash withdrawals. Money was also withdrawn from the accounts via ATM, and the debit cards were occasionally used to purchase money orders.

Smith's National City account was among those that came to the attention of federal investigators. Examination of the account revealed that two counterfeit checks were deposited via ATM in August and September of 2007, and each deposit was shortly followed by several withdrawals. When the investigators spoke to Smith about her account activity, she recounted the same version of events to which she would later testify at trial.

In August of 2007, Smith gave her National City debit card and personal identification number to Lionel Eddington, a classmate at the trade school she attended.[1] Eddington asked Smith if he could use her bank account to cash a check he claimed to have received from an insurance company as settlement for a car accident in which he was involved. Eddington walked with a cane and Smith knew he had been in a car accident. He asked to use her bank account because he did not have one himself. Smith claimed she felt comfortable giving Eddington her banking information because they had been attending school together for seven months, and they occasionally socialized together, along with other students.

---

[1] Smith identifies Lionel's last name as "Eddington" for the first time on appeal; she did not provide this information to investigators or at trial.

The following week, two counterfeit checks totaling $14,192.21 were deposited in Smith's account via ATM. Two days after the first check was deposited, Smith picked up Eddington and a companion of his in her car. At Eddington's behest, Smith drove to three National City branches. At each branch, Smith went inside, presented her driver's license as identification, and withdrew cash from her account—a $2,800 withdrawal from the Pickerington branch at 10:07 a.m., a $2,900 withdrawal from the Main/Davidson branch at 10:25 a.m., and a $1,600 withdrawal from the Bexley branch at 10:50 a.m. She gave all the money to Eddington.

After these withdrawals, Eddington and the unidentified man got out of Smith's car. Before departing, Eddington told Smith to look in her glove compartment, wherein she found $200 cash. She said she considered the money a "tip" for driving him around and letting him use her account. Eddington did not return Smith's debit card to her, and later that same day, the card was used to make a $502 withdrawal from an ATM and to purchase two $500 money orders from a post office.

The second check was deposited via ATM days after the three withdrawals were made. Within hours of the second check being deposited, $102 was withdrawn from Smith's account at a different ATM. The following day, a $502.50 withdrawal was made at yet another ATM. Smith testified that Eddington never returned the debit card to her.

Smith was indicted on August 11, 2011, along with twenty-three codefendants. She was charged with one count of conspiracy to utter or possess counterfeit checks and to commit bank fraud, in violation of 18 U.S.C. § 371. Smith's trial began on January 28, 2013, and the jury returned a guilty verdict on February 4, 2013. Smith was sentenced to three years of probation and ordered to make restitution. She timely appealed.

## DISCUSSION

**I.    Smith's Ineffective Assistance of Counsel Claim**

We evaluate ineffective assistance of counsel claims using the two-pronged *Strickland* standard: the defendant must show "(1) that defense counsel's performance was constitutionally deficient and (2) that the deficient performance prejudiced the defense sufficiently to undermine the reliability of the trial." *Ramonez v. Berghuis*, 490 F.3d 482, 486 (6th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). However, "we generally do not address ineffective assistance claims on direct appeal." *United States v. Hunter*, 558 F.3d 495, 508 (6th Cir. 2009) (citation omitted). We take this course when, as is often the case, the record is insufficient to assess the merits of the claim. *See United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009); *cf. United States v. Franklin*, 415 F.3d 537, 555–56 (6th Cir. 2005) (noting that this Court will consider an ineffective assistance claim on direct appeal when the existing record is adequate to evaluate the merits of the claim). In the instant case, Smith claims that her trial counsel failed to adequately investigate her case inasmuch as counsel did not seek out witnesses or records to corroborate Smith's claim that Lionel Eddington was her classmate.

It is well-established that "a lawyer's *Strickland* duty 'includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'" *Ramonez*, 490 F.3d at 487 (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). Although "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . a failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (internal quotation marks omitted).

Smith asserts that her trial attorney's decision "was not a strategic choice based on a thorough investigation of law and facts." [Docket No. 43, Appellant's Br., § I.] However, there is nothing in the record that supports this contention. Indeed, the record is devoid of any evidence that Smith's trial counsel actually failed to conduct an investigation. We cannot evaluate whether Smith's counsel provided constitutionally deficient performance—the first prong of the *Strickland* test—because the record is silent on the reasons trial counsel did or did not ascertain the existence of the classmate Smith described.

Because the record is insufficient for the Court to adequately assess the merits of Smith's ineffective assistance of counsel claim, we dismiss it without prejudice. Smith is free to raise the claim in a post-conviction proceeding if she should so choose.[2] *See Warman*, 578 F.3d at 348.

## II. Smith's Due Process Claim Concerning Pre-indictment Delay

Due process claims concerning pre-indictment delay are reviewed *de novo*. *United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007).

The indictment, filed on August 11, 2011, charged Smith and her twenty-three codefendants with a conspiracy that began "on or about July 1, 2006 and continu[ed] to the present, the exact dates being unknown to the Grand Jury." [R. 11, Indictment, PGID 32.] Smith claims that the five years it took for the government to indict her violated her Fifth Amendment right to due process. The government criticizes Smith's description as inaccurate, and points out that the fraudulent activity in connection with Smith's bank account did not occur until August and September 2007. Less than four years passed between those acts and the 2011 indictment.

---

[2] Smith raises her ineffective assistance claim for the first time on appeal. Her request that we remand the case for a hearing on whether counsel acted reasonably is inappropriate since the claim was not initially raised before the district court. *See United States v. McHayle*, 1991 WL 105758, at *2 (6th Cir. 1991) (unpublished) (per curiam).

The government also notes that Smith does not claim that the indictment was filed outside of the applicable statute of limitations.

"Federal Rules of Criminal Procedure 12(b)(3)(A) & (B) provide that motions alleging a defect in instituting the prosecution or in the indictment 'must be raised before trial.'" *Brown*, 498 F.3d at 527–28. Failure to timely raise such issues results in a waiver of those objections. Fed. R. Crim. P. 12(e) (2013) (amended 2014).[3] "This Court 'strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review.'" *Brown*, 498 F.3d at 528 (quoting *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988)). There is nothing in the record demonstrating that Smith ever moved to dismiss the prosecution based on pre-indictment delay. Accordingly, the issue is waived, and the claim is dismissed.

### III.    Smith's Proposed "Good Faith Defense" Jury Instruction

We review a district court's decision to deny a proposed jury instruction for an abuse of discretion. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 305 (6th Cir. 2011) (citation omitted). In that examination, we look at the jury charge as a whole to determine whether the district court fairly and adequately submitted the issues and law to the jury. *United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002) (citation omitted). While a defendant is generally entitled to an instruction on any colorable defense, *id.*, "[a] refusal to give requested instructions is reversible error only if (1) the instructions are correct statements of the law; (2) the instructions are not substantially

---

[3] On April 25, 2014, the Supreme Court adopted amendments to Federal Rule of Criminal Procedure 12. The amended rule became effective on December 1, 2014, and "govern[s] in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." H. Doc. 113-162 (2014). Although the Rule 12 provisions applicable to this case remain substantively unchanged, the amended Rule does not govern Smith's case in any event because the district court's final judgment was entered on June 13, 2013—well before the effective date of the Rule 12 amendments.

covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Algee*, 599 F.3d 506, 514 (6th Cir. 2010) (internal quotation marks omitted). We will not reverse a verdict because of an erroneous jury instruction if the error was harmless. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) (citation omitted).

Smith claims that the district court erred in failing to issue her proposed jury instruction on a good faith defense. The district court denied the proposed instruction because it was the "model instruction to the substantive offense of fraud, and [the government did not] have to prove the elements of the substantive offenses underlying [the charged] conspiracy." [R. 692, Tr. of Jury Trial Proceedings Day 5, PGID 2687.] The court reasoned that its explanation of the *mens rea* requirement for conspiracy incorporated the good faith defense and that "it would confuse the jury to [instruct that] good faith negates [an] intent to defraud when [intent to defraud is not really] an element of the conspiracy itself." [*Id.*]

The district court did not abuse its discretion in denying the requested good faith instruction because the substance of the instruction was covered by other elements of the charge, and its absence did not impair Smith's theory of the case. Smith's proposed instruction is a correct statement of law—indeed, it is this Circuit's pattern good faith instruction verbatim—but the district court concluded that good faith is actually a defense to the substantive fraud offense, which was not charged, and therefore the instruction would confuse the jury. This conclusion is not erroneous, and therefore the district court did not abuse its discretion is reaching it.

Moreover, the instructions the court did give incorporated the substance of a good faith defense. The district court instructed the jury, "To convict a defendant, the government must

prove that she knew the conspiracy's main purpose, and that she knowingly and voluntarily joined it intending to help advance or achieve its goals." [*Id.* at 2778.] Here, the government alleged that the goal of the conspiracy was utterance and possession of counterfeit checks and bank fraud—offenses which the court instructed require an "inten[t] to deceive" and "intent to defraud," respectively. [*Id.* at 2776–77.] In the charge, the district court also cautioned the jury that "proof that a defendant simply knew about a conspiracy or was present at times or associated with members of the group is not enough even if she approved of what was happening or did not object to it." [*Id.* at 2778.] Similarly, the court made clear that "just because a defendant may have done something that happened to help a conspiracy does not necessarily make her a conspirator." [*Id.*] Reviewing the jury charge as a whole, the district court's instructions on the *mens rea* requirement for conspiracy substantially encompassed Smith's good faith defense. *See United States v. Stephens-Miller*, 582 F. App'x 626, 637 (6th Cir. 2014) (citing *United States v. Pomponio*, 429 U.S. 10, 12–13 (1976)) ("[A] trial court need not instruct on good faith if it provides proper instructions to the jury regarding the intent required for commission of the . . . offense[]."); *see also United States v. McGuire*, 744 F.2d 1197, 1201 (6th Cir. 1984) (holding that "[t]he issue of good faith was clearly placed before the jury, even if those precise words were not used" because the "instructions with regard to specific intent adequately informed the jury of the defendants' theory of the case, and properly placed the burden of proof of intent on the government").

Finally, the absence of the good faith instruction did not impair Smith's theory of the case. Smith and her trial counsel took every opportunity to tell the jury that Smith was unaware of any conspiracy, did not knowingly defraud anyone, and thought she was simply doing a favor for a classmate. Smith testified that she had no reason to distrust her classmate or to suspect that

8

something was amiss when he asked to deposit a check in her bank account. Smith's trial counsel argued during summation that the government failed to establish that Smith "knowingly did anything" aside from agree to do an innocuous favor for a friend. In light of all of this, Smith cannot credibly claim that the missing instruction impaired her ability to present her defense.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Smith's conviction and sentence.