RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 15-5844/5845

JOHN NATHAN COLEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:07-cr-00185—Joseph M. Hood, District Judge.

Argued: June 8, 2016

Decided and Filed: August 31, 2016

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Daniel E. Hancock, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

BOGGS, J., delivered the opinion of the court in which GILMAN, J., joined. CLAY, J. (pp. 15–22), delivered a separate dissenting opinion.

_____

## OPINION

_____

BOGGS, Circuit Judge. In 2015, John Nathan Coleman used marijuana and cocaine while serving a term of supervised release from federal prison. After Coleman admitted his

1

offense to a probation officer, the government moved to revoke his supervised release. In response to Coleman's dissatisfaction with his court-appointed attorney, the district court appointed new defense counsel minutes before holding a revocation hearing in Coleman's case. The district court proceeded to find that Coleman had violated the terms of his supervised release and imposed an above-Guidelines sentence of thirty months of imprisonment. Coleman appeals the revocation of his supervised release, arguing that he was constructively denied the assistance of counsel due to the brief amount of time between the appointment of new counsel and his revocation hearing. Coleman also argues that his sentence is procedurally unreasonable. For the reasons given below, we affirm.

I

In October 2007, Coleman sold three grams of crack cocaine to an informant working for the Drug Enforcement Administration ("DEA"). DEA agents subsequently arrested Coleman after he helped the informant to arrange a second cocaine transaction. Coleman ultimately pleaded guilty to conspiracy to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The district court sentenced Coleman to ninety-two months of imprisonment and four years of supervised release and recommended that Coleman undergo substance-abuse treatment.

Six months before Coleman's sentence was set to expire, the Bureau of Prisons granted Coleman's application for a furlough transfer to a Lexington, Kentucky, establishment run by a charity, where he was to serve out the remainder of his sentence. Two months later, Coleman escaped from the establishment and did not return. The United States Marshal Service ultimately found Coleman in a Lexington neighborhood, and Coleman subsequently pleaded guilty to escape from federal custody, a violation of 18 U.S.C. § 751(a). Judge Joseph Hood, who was assigned Coleman's new case, sentenced Coleman to fifteen months of imprisonment, to be followed by three years of supervised release that would run concurrently with his unfinished four-year supervised-release term.

Coleman completed his prison sentences on September 19, 2014, and began serving his two concurrent terms of supervised release. But less than two months later, Coleman admitted to

having violated the conditions of his supervised release by using cocaine. Judge Hood ordered that Coleman serve an additional six-month term of imprisonment, to be followed by ninety days of in-patient substance-abuse treatment and the remainder of his supervised-release term.

After finishing the court-ordered substance-abuse treatment on June 30, 2015, Coleman was released from the treatment facility on several conditions, including that he refrain from using controlled substances without a prescription and abstain from committing any state or federal offenses. But two days later, in a routine interview with his probation officer, Coleman admitted that he had recently smoked marijuana. The following week, after a urine sample that Coleman provided tested positive for cocaine, the government petitioned the court to revoke Coleman's supervised-release term for violating the conditions that he not use controlled substances or engage in criminal activity.

On July 9, a magistrate judge appointed local attorney Derek Gordon to represent Coleman and scheduled a revocation hearing for August 4 before Judge Hood, who, as mentioned above, had already presided over Coleman's escape conviction and sentencing, as well as his first revocation hearing. But eight days later, Coleman filed a pro se motion for new counsel, in which he expressed that he was dissatisfied with Gordon's work. In his motion, Coleman also admitted to taking "2 hits off of a [marijuana] joint" and asked the district court for leniency in sentencing, explaining that he had played only a minor role in the 2007 drug conspiracy and that he wanted to resume "a normal life" with his wife and child.

Judge Hood convened a hearing on Coleman's motion on July 27 at 10:05 a.m. The district court first asked Gordon and Coleman about the latter's motion for new counsel. When Coleman confirmed that he wanted to discontinue his relationship with Gordon, the district court granted Coleman's request and relieved Gordon. The court then appointed attorney Robert Abell, who was already present at the hearing on the court's request, as Gordon's replacement. Upon confirming that Abell had copies of Coleman's presentence and violation reports, the court called for a recess in order to give Abell time to review the documents with Coleman.

The court went back on the record at 10:19 a.m., fourteen minutes after the hearing first started. Abell informed the court that Coleman would not be contesting the marijuana and

cocaine-related charges mentioned in the violation reports and remarked that "[i]t's my understanding the court has a final hearing next Tuesday." The court asked whether the parties wished to hold that final hearing as scheduled during the following week, or if they preferred to "just go ahead and have it today." Coleman spoke up and volunteered that he "wanted to get it out of the way," and Abell confirmed that "Mr. Coleman is ready to go forward today and get this matter completed." In accordance with Coleman's request, the court treated the remainder of the hearing as a revocation hearing.

The district court began by noting that the presentence report identified the Guidelines imprisonment range for Coleman's offense as twenty-one to twenty-seven months. The court then asked whether Abell wished to "speak on behalf of Coleman." Abell responded:

> Judge, I guess the record indicates at worst that Mr. Coleman has an ongoing substance abuse problem that he's struggled with significantly, and certainly the court has familiarity with his history and I am sure will take that into consideration when determining what action is appropriate today.

The court then asked whether Coleman wished to make a statement. Coleman, speaking on his own behalf, admitted to the court that he was "wrong" to have used illegal drugs while on supervised release, but then proceeded to discuss his substance-abuse problem and complain about the inadequacy of the treatment that he received in the residential treatment facility. In response, the court observed that Coleman had repeatedly violated the terms of his supervised release:

> [W]hen you do . . . dope, that's a violation, and that's—that just seems to be a recurring problem with you. . . . [A]pparently you don't seem to appreciate the fact that when we say do not use illegal substances, that means you don't use it, regardless of whether you . . . get home and you don't have a drug program immediately available for you . . . .

The court also admonished Coleman for his attempt to blame his violations on the treatment facility's failures:

> I understand that [the residential program] didn't have what you wanted them to have or [what] they said they were supposed to have. But then you got . . . out and you did it. You did dope. The problem is you are not supposed to be doing dope. . . . Period. Not at all. . . . I don't think it is helping you at all to be involved

[in treatment], and it's not helping us. We are spending money . . . [and] to be helped, you have got to want to be helped.

The court concluded that "you do have a weakness, and I'm sorry for that; but we have tried to do what we could to help you with that weakness, and we haven't been very successful."

The court then revoked Coleman's supervised release and sentenced him to thirty months of imprisonment—three months above the upper end of the applicable Guidelines range—with no further supervised release. The court concluded by asking Coleman, his counsel, and the prosecutor if they had any objections to the imposed sentence. Each responded in the negative.

Coleman timely filed a notice of appeal. On appeal, Coleman argues that he was constructively denied the assistance of counsel during his revocation hearing. He also argues that the district court's sentence was procedurally unreasonable because the district court failed to consider relevant sentencing factors and did not provide reasons for imposing an above-Guidelines sentence. We address each of Coleman's arguments in turn.

II

We begin with Coleman's claim that he was constructively denied the assistance of counsel at his revocation hearing on the ground that Abell had insufficient time in which to prepare a defense. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *United States v. Ferguson*, 669 F.3d 756, 761 (6th Cir. 2012). However, we generally review such claims on collateral review because the record on direct appeal "is [often] insufficient to assess the merits of the claim." *United States v. Smith*, 600 F. App'x 991, 993 (6th Cir. 2015); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Only in the rare case that would not benefit from further record development do we consider such claims on direct review. *See United States v. Franklin*, 415 F.3d 537, 555–56 (6th Cir. 2005).

As a general rule, claims of ineffective assistance of counsel are governed by the familiar two-part framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a criminal defendant is not entitled to relief unless he proves both that counsel's performance was deficient, measured by reference to "an objective standard of reasonableness,"

*id.* at 688, and resulting prejudice, which exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. But in limited cases, we may dispense with *Strickland*'s prejudice inquiry where the "circumstances arising in a criminal prosecution 'are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Fuller v. Sherry*, 405 F. App'x 980, 985 (6th Cir. 2010) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

In particular, in *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court identified three scenarios in which a defendant is entitled to a presumption of prejudice: First, courts must presume prejudice where there has been a "complete denial of counsel" at a "critical stage" of the criminal proceedings. *Id.* at 659. Second, we also presume prejudice "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Ibid.* Third, even if counsel is present and available to assist the accused, a prejudice inquiry is unnecessary where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is minimal. *Id.* at 559–60.

We have cautioned that under the third scenario, which Coleman invokes on appeal, *see* Appellant Br. 8, the presumption of prejudice applies only in "limited, egregious circumstances," not simply "because counsel was belatedly appointed and the court refused to grant additional time to prepare," *Fuller*, 405 F. App'x at 985. When looking to the surrounding circumstances in this last category of cases, five factors "relevant to an evaluation of a lawyer's effectiveness in a particular case" aid courts' determination of whether the prejudice inquiry may be dispensed with, *Cronic*, 466 U.S. at 663, namely, "(1) [t]he time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel," *id.* at 652 (quoting *United States v. Cronic*, 675 F.2d 1126, 1129 (10th Cir. 1982)).

As applied to Coleman's case, these five factors suggest that this is not one of the extraordinary and "egregious" cases in which we may dispense with *Strickland*'s prejudice inquiry. *Fuller*, 405 F. App'x at 985. Coleman estimates that he had twelve minutes in which to consult with Abell. Appellant Br. 4. Although we acknowledge that twelve minutes would ordinarily be a relatively short amount of time for an attorney to investigate and prepare for a

revocation hearing, Coleman did not—and does not now—contest the charges against him.  *Ibid.*  Moreover, this first factor alone does not warrant applying the presumption of prejudice.  As we have recognized, the adequacy of time for preparation can be measured only by reference to the other *Cronic* factors.  *See Fuller*, 405 F. App'x at 988; *see also Chambers v. Maroney*, 399 U.S. 42, 54 (1970) ("[W]e are not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel . . . .").

None of the remaining factors point in Coleman's favor.  Despite bearing the burden of proof, Coleman points to no evidence that Abell lacked criminal-defense experience.  Moreover, the charge below—that Coleman violated the conditions of his supervised release by using recreational drugs—was not nearly as grave as the charges in those cases in which we have dispensed with the presumption of prejudice.  *See United States v. Morris*, 470 F.3d 596, 598 (6th Cir. 2006) (felony firearm and drug possession); *Mitchell v. Mason*, 325 F.3d 732, 735 (6th Cir. 2003) (first-degree murder); *Hunt v. Mitchell*, 261 F.3d 575, 578 (6th Cir. 2001) (felonious assault and domestic violence).  Nor does Coleman articulate any possible defenses to the revocation charges or endeavor to identify any witnesses that Abell should have called.  Importantly, Coleman openly admitted in his motion for new counsel that he had smoked marijuana while on supervised release, and the government produced urinalysis results that showed that Coleman had also used cocaine.  Indeed, only after consulting with Coleman did Abell inform the court that Coleman would not be contesting the revocation charges.

We acknowledge that it is conceivable that Abell could have raised additional facts and arguments that might have encouraged the court to impose a lighter revocation sentence.  But because Abell, by bringing Coleman's substance-abuse problem to the court's attention, did not "entirely" fail to subject the prosecution's case to adversarial testing, *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Cronic*, 466 U.S. at 659, our initial inquiry is whether there is more than a minimal "likelihood that any lawyer, even a fully competent one, could provide effective assistance" under the circumstances of this case, *Cronic*, 466 U.S. at 659–60.

Our review of the record suggests that it is entirely possible that competent counsel could have used the brief recess to ascertain that Coleman had, in fact, used marijuana and cocaine while on supervised release, and to learn about the few mitigating factors that were available to

Coleman, namely, the realities that he had a substance-abuse problem, that he never received the substance-abuse treatment that he needed, and that his wife and child could help him to integrate into society. Indeed, this is precisely what the district court learned during its eleven-minute colloquy with Coleman, and it appears that Abell himself may have been aware of these facts as well; Abell reminded the district court that Coleman "has an ongoing substance abuse problem that he's struggled with significantly" and urged the court to "take that [problem] into consideration."

We emphasize how significantly the circumstances of this case differ from the facts in those few cases in which we have dispensed with *Strickland*'s prejudice inquiry. In *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), for example, state and federal prosecutors forced a defendant to decide whether to plead guilty to state drug and firearm charges or risk facing more serious federal charges, but permitted him only a few minutes to consult his newly appointed counsel in a courthouse "bull pen" in which "attorneys and clients [had] to shout their communication" to be heard over the din of the "crowded" cell. *Id.* at 599. At that point, the attorney was misinformed of the likely federal sentence that the defendant would face and had not even received complete discovery. *Id.* at 598–99, 602. We faced nearly identical facts in *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), in which we held that a defendant was constructively denied counsel when his attorney spoke with him for a mere six minutes before going to trial for first-degree murder. *Id.* at 741, 744–48. Similarly, in *Hunt v. Mitchell*, 261 F.3d 575 (6th Cir. 2001), a defendant accused of felonious assault and domestic violence proceeded to trial without having consulted with his attorney at all. *Id.* at 583.

Coleman's case differs in many salient respects, all of which can be boiled down to the reality that unlike the attorneys in *Morris*, *Mitchell*, and *Hunt*, Abell could have adequately prepared himself for the relatively simple task of advocating for a lower sentence in the time he was given. Indeed, the record suggests that Abell was far more prepared than the defense attorney in *Fuller v. Sherry*, 405 F. App'x 980 (6th Cir. 2010), in which we held that a defendant was not entitled to a presumption of prejudice. *Id.* at 989. In that case, defense counsel had only eighty-eight minutes "to meet with [his] new client, discuss a potential plea, consider motions and discovery requests, review discovery documents, and read the preliminary examination

transcript." *Id.* at 988. Given that Fuller's case was relatively uncomplicated when compared with those of the defendants in *Morris*, *Mitchell*, and *Hunt*, we concluded that unlike the attorneys in those cases, Fuller's attorney "did not have to go to trial entirely unprepared," and *Strickland*, not *Cronic*, therefore provided the appropriate framework for gauging counsel's effectiveness. *Ibid.* Because it is clear that Abell was not "entirely unprepared," the same result obtains here.

We note that Coleman, himself a seasoned veteran of the criminal-justice system, did not believe that Abell lacked sufficient knowledge of his circumstances to adequately represent him at the revocation hearing. Indeed, if the facts of this case were as stark as those set forth by our dissenting colleague, we might well view this case differently. But the person who "fast-tracked" this case and put it on "speed dial" was Coleman. Dissenting Op. at 15, 20. Prior to the revocation hearing, Coleman had an attorney. But Coleman requested a new one, and the district court obliged by appointing Abell. Then, rather than taking advantage of the court's invitation to adjourn the hearing, Coleman declined, volunteering, "I wan[t] to get it out of the way." The speed with which Coleman's case progressed was therefore determined by Coleman himself, not by Abell, the prosecutor, or the court. Under these circumstances, we believe that *Strickland* sets forth the standard applicable to Coleman's claim of ineffective assistance of counsel.

We further note that the dissent's quotation from the district court that "nothing is Mr. Coleman's fault" is incomplete when read in isolation. Dissenting Op. at 20. The district court's full statement reads: "I don't want Mr. Coleman to think that—see, Mr. Coleman, from what I can tell just looking at several letters that I got from Mr. Coleman, nothing is Mr. Coleman's fault." That statement was made while the court was considering Coleman's motion for new counsel. It in no way related to Coleman's decision to forego the adjournment.

We think that, ordinarily, the wiser course would be for counsel to spend more than a few minutes preparing for an event as significant as a hearing at which revocation and sentencing decisions will be made. But this is not a case in which "the constructive denial of counsel and the associated collapse of the adversarial system is [e]minently clear." *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002). Given that the particular circumstances of this case do not so obviously suggest that the result below was "inherently unfair," *Cronic*, 466 U.S. at 661, the

*Strickland* framework must be applied.  Because Coleman does not meaningfully argue that he was prejudiced by Abell's alleged failures, *see* Appellant Br. 9–10, we defer consideration of Coleman's *Strickland* claim for collateral review, at which time he will be able to fully develop the record.  *See United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (observing that the preference for considering ineffective-assistance-of-counsel claims on collateral review "stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel [under *Strickland*] and appellate courts are not equipped to resolve factual issues" (citation omitted)).  Despite our dissenting colleague's view, *see* Dissenting Op. at 21–22, nothing in this opinion suggests that Coleman has waived his Sixth Amendment right to counsel.

III

Coleman next claims that his thirty-month sentence is procedurally unreasonable.  Ordinarily, for a sentence to be procedurally reasonable, the district court must have "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range."  *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).  In this case, Coleman argues that the district court failed to consider the factors set forth in 18 U.S.C. § 3553(a), failed to consider substance-abuse treatment as an alternative to incarceration, and failed to state in open court its reasons for imposing a sentence three months above the applicable Guidelines range.

We ordinarily review the procedural reasonableness of a sentence for an abuse of discretion.  *United States v. Daniels*, 641 F. App'x 481, 486 (6th Cir. 2016).  But where, as here, the defendant fails to raise any objection to the procedural reasonableness of a sentence after the district court explicitly asks for objections, we may review only for plain error.  *See United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).  To show plain error, Coleman must establish (1) that an error occurred; (2) that the error was clear or obvious; (3) that it affected his substantial rights; and (4) that it affected the "fairness, integrity, or public reputation of the judicial proceedings."  *United States*

*v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). We have held that "[a] sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). Applying this standard, we conclude that none of Coleman's complaints warrants the vacation of his sentence.

A

As adverted to above, when determining a defendant's sentence upon finding a violation of supervised-release conditions, a district court must consider various sentencing factors, including those set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(e). All told, a district court must assess "the nature and circumstances of the offense and the history and characteristics of the defendant; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant appropriate treatment; the pertinent Guidelines or policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims." *United States v. Johnson*, 640 F.3d 195, 203 n.1 (6th Cir. 2011) (citing 18 U.S.C. §§ 3553(a), 3583(e)). A district court must also adequately articulate its reasoning for imposing the chosen sentence. *Id.* at 202. A failure to satisfy both requirements is procedural error that may warrant resentencing. *See United States v. Johnson*, 356 F. App'x 785, 793–95 (6th Cir. 2009).

Coleman argues that the district court's explanation of its sentence suggests that it did not consider any of the relevant factors set forth in 18 U.S.C. § 3553(a) or the possibility of treatment. But the requirement that a district court weigh the factors does not obligate the district court to make express on-the-record "findings" on each one. Appellant Br. 11. As we have emphasized, some factors might prove to be more relevant than others in a given case, and the law thus does not require district courts to "provide a 'ritualistic' one-by-one 'incantation' of each factor." *United States v. Malone*, 404 F. App'x 964, 965 (6th Cir. 2010) (quoting *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008)). In other words, we do not "read a sentencing transcript in a vacuum." *Id.* at 967. Instead, we ask whether the sentencing judge provided an explanation for the sentence sufficient for this court to discern that the judge weighed the relevant factors and did not "simply selec[t] what the judge deem[ed] an appropriate sentence

without such required consideration." *Moon*, 513 F.3d at 539 (quoting *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007)). In reviewing the record as a whole, we conclude that the district court's explanation for Coleman's thirty-month sentence satisfied this goal.

Read in its entirety, the hearing transcript shows that the district court considered the relevant sentencing factors and chose to give Coleman a relatively lengthy term of imprisonment out of concern for Coleman's unwillingness to tackle his substance-abuse problem and the corresponding need to deter him from using illegal drugs in the future. In arriving at this conclusion, the district court addressed the nature and circumstances of Coleman's offense when it admonished him for his decision to continue using illegal drugs while on supervised release. The court explained that Coleman did not "seem to appreciate the fact that when we say do not use illegal substances, that means you don't use it, regardless of whether" a treatment program is available. The district court also addressed Coleman's own history and characteristics, noting that he failed to take responsibility for his recurring violations and instead attempted to blame the residential treatment program for not properly treating his addiction. Lastly, the district court explicitly considered and rejected substance-abuse treatment as an alternative to incarceration when it acknowledged that although Coleman had a "weakness" for drugs, his unwillingness to "be helped" in the past strongly suggested that further treatment would not "hel[p] [him] at all."

In short, the district court clearly and adequately explained its reasons for sentencing Coleman to a thirty-month term of imprisonment and not returning him to treatment, and the court's explanation reveals that it carefully considered the various factors relevant to sentencing. A district court can, of course, "always say more." *Malone*, 404 F. App'x at 966. But in this case, the district court's thorough discussion of Coleman's history and problems adequately apprised the parties, the public, and this court of the basis for Coleman's sentence. The law demands no more.

B

Coleman also challenges the procedural reasonableness of his sentence on the ground that the district court did not acknowledge or explain why it gave Coleman an above-Guidelines sentence. 18 U.S.C. § 3553(c)(2) provides that a district court must give "the specific reason for

the imposition of" an above-Guidelines sentence in open court. This requirement extends to revocation hearings. *See Johnson*, 356 F. App'x at 793–95; *United States v. Manning*, 317 F. App'x 517, 523–24 (6th Cir. 2009). Applying 18 U.S.C. § 3553(c)(2), we have held that a district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Daniels*, 641 F. App'x at 489–90 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). A failure to explain that justification to the defendant in open court is error. *Ibid.*; *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008).

In this case, the district court did not explicitly acknowledge that it was imposing a sentence that was three months above the applicable Guidelines range. As our recent decision in *United States v. Daniels*, 641 F. App'x 481 (6th Cir. 2016), suggests, such a failure might well have been reversible error if an abuse-of-discretion standard applied in this case. *Id.* at 490–92. But a district court's failure to explicitly acknowledge that it is imposing an above-Guidelines sentence does not amount to plain error where the district court properly calculates the applicable Guidelines range and provides an explanation for its sentence that makes clear why the imposed sentence fell outside of that range. *Compare United States v. Zobel*, 696 F.3d 558, 566–69 (6th Cir. 2012) (finding no plain error where district court otherwise adequately explained sentence and acknowledged applicable Guidelines sentencing range), *with Blackie*, 548 F.3d at 401–02 (explaining that the district court plainly erred when it neither referred to the applicable Guidelines range nor provided specific reasons for an upward variance in court). Such is the case here.

At the start of Coleman's revocation hearing, the district court calculated Coleman's maximum revocation sentence of thirty-six months and the applicable Guidelines range of twenty-one to twenty-seven months. In a lengthy colloquy with Coleman, the district court proceeded to consider in depth the applicable sentencing factors, making it clear that it was troubled by Coleman's obvious and repeated disregard for the supervised-release conditions that the court had imposed in the past. In short, the district court's discussion left little room for ambiguity for why it believed that an above-Guidelines sentence was necessary in Coleman's case. Under these circumstances, the district court's failure to "add an explicit coda" as to how

each of its observations supported a variance does not amount to plain error. *Malone*, 404 F. App'x at 969.

## IV

We acknowledge that Coleman's counsel was given a relatively short amount of time in which to prepare for his client's revocation hearing. But a presumption of prejudice is not warranted in this case given that Coleman's revocation hearing presented his attorney with a relatively simple task for which extensive preparation would have been of questionable value. In light of the reality that the parties have not extensively briefed the issue of prejudice on appeal, Coleman's ineffective-assistance-of-counsel claim would more appropriately be brought in a 28 U.S.C. § 2255 proceeding under the framework set forth in *Strickland*. Given that Coleman's sentence withstands his procedural-reasonableness challenge on plain-error review, we AFFIRM the district court's revocation judgment.

———————————

**DISSENT**

———————————

CLAY, Circuit Judge, dissenting.  Imagine that you are charged with a crime.  Being too poor to afford a lawyer, the court appoints one for you.  You then meet with your lawyer for the first time.  Twelve minutes later, you stand in front of the judge as your lawyer says a single sentence on your behalf.  You plead guilty and are sentenced to prison for two and a half years.  This is hardly what one would call effective assistance of counsel; and such circumstances could not possibly satisfy the constitutional requirement that a defendant be afforded effective legal representation.  Yet, this is exactly what happened to John Coleman when he showed up for court on July 27, 2015.  When Coleman stood before the judge that day, he did not get the assistance of counsel guaranteed by the Sixth Amendment.  What he got instead was justice on speed dial.

The reason for this dissent is simple.  What happened to Coleman—an indigent defendant who had only twelve minutes to meet with his court-appointed lawyer for the first time before being sentenced to prison for violating his supervised release—is precisely the sort of deprivation of counsel against which the Sixth Amendment was designed to protect.  And because the constitutional violation here is so flagrant, Coleman does not need to show prejudice in order to prevail.  Rather, because no lawyer could possibly provide effective advice in just twelve minutes—let alone read and digest a twenty-four page presentence investigation report and a ten-page supervised release violation report—Coleman must be presumed to have been prejudiced by the sequence of events which led to his two and a half year prison sentence.  His case should therefore be remanded for resentencing.

I.

The majority gives the misimpression that this case should be reviewed in a habeas proceeding under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which

ordinarily applies to claims of ineffective assistance of counsel.[1] But *Strickland*—which requires a showing of prejudice—does not apply to this case. Rather, this case, which involves a claim of constructive denial of counsel, falls within the *per se* ineffective assistance of counsel exception set forth in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court held that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. In other words, where the error is so obvious that a court should be aware of the threat to a defendant's Sixth Amendment right to counsel, courts may do away with *Strickland's* prejudice analysis altogether. *Id.* at 658-59. *See, e.g., United States v. Herrera-Zuniga*, 571 F.3d 568, 591-93 (6th Cir. 2009) (discussing possibility that defense counsel's submission of a letter to the court castigating his client and describing him as unworthy of empathy and "at the bottom of society's hierarchy" as apparent professional malfeasance potentially constituting *per se* ineffectiveness); *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997) (*per se* violation of the right to counsel where the defense attorney displayed continual hostility to and contempt for his client).

*Cronic*, not *Strickland*, applies "when . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Cronic*, 466 U.S. at 659-60. In explaining *Cronic*, the Supreme Court has identified three situations where a defendant need not show prejudice to establish ineffective assistance of counsel:

> First and "[m]ost obvious" was the "complete denial of counsel." . . . Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Finally, we said that in cases like *Powell v. Alabama* where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.

*Bell v. Cone*, 535 U.S. 685, 696 (2002) (citations omitted).

---

[1]The majority attempts to create a distraction with its multiple suggestions that this case is more appropriate for collateral review, *i.e.*, in a habeas proceeding. Although it is true that "[a]s a general rule, this Court declines to rule on claims of ineffective assistance of counsel on direct appeal," *United States v. Detloff*, 794 F.3d 588, 594 (6th Cir. 2015), that rule only applies when "the record is . . . inadequate to evaluate such a claim." *United States v. Foreman*, 323 F.3d 498, 502 (6th Cir. 2003). That is not the case here since there is nothing to be gained from any further development of the record. Rather, because the "parties have adequately developed the record, . . . the court can elect to hear the issue on direct appeal." *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).

II.

Not surprisingly, the majority does not acknowledge that constructive denial of counsel "can occur under circumstances where even competent counsel could not render assistance," *i.e.*, *Cronic's* third scenario. *United States v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006). And that is precisely the case here, since no lawyer—not even the most experienced and competent criminal defense attorney—could provide the kind of assistance of counsel required by the Sixth Amendment in just twelve minutes.

When the district court appointed Robert Abell to represent Coleman at his supervised release violation hearing, Abell literally knew nothing at all about Coleman. Abell knew nothing about Coleman's criminal history; had not reviewed Coleman's twenty-four page presentence investigation report ("PSR") (*see* R. 264, PSR, PageID# 640-63); had not reviewed Coleman's ten-page supervised release violation report (*see* R. 261, Supervised Release Violation Report, PageID# 610-19)[2]; and likely had no idea what Coleman was even accused of doing. Yet, just twelve minutes after meeting his client for the first time—and after being handed thirty-four pages of material—Abell told the court his client would be pleading guilty, and declined the opportunity for an adjournment.

It would have been virtually impossible for Abell, or any lawyer for that matter, to read and digest thirty-four pages of reports in just twelve minutes—especially because the twenty-four page PSR included a calculation of Coleman's guideline range, which can be complicated for even the most experienced attorneys to understand. *See, e.g., Morris*, 470 F.3d at 602 (finding constructive denial of counsel where attorney "was precluded from taking basic preparatory steps such as looking at [the defendant's] prior record in conjunction with the federal sentencing guidelines so as to make an accurate prediction of his guideline range").

Moreover, even if Abell, as the majority claims, could have discovered mitigating evidence in Coleman's background during their twelve minute conference (minus whatever time Abell spent reading the relevant reports), it seems virtually impossible that Abell could have

---

[2]As the majority points out, when the district court appointed Abell to represent Coleman, it confirmed that Abell had a copy of Coleman's PSR and also the supervised release violation report prepared by the probation office. (*See* R. 266, Supervised Release Violation Hearing Transcript, PageID# 725.)

done any of the other things a criminal defense lawyer should do when meeting a client for the first time. *See id.* at 601 (noting that the "ABA Standards for Criminal Justice provide that a *thorough* discussion with the client is necessary at the outset of representation") (emphasis added) (citing 1 ABA Standard for Criminal Justice 1(a) & (b)).

Abell should have, at a minimum, evaluated whether Coleman even understood the nature of the proceedings and was able to assist in his own defense, which minimally would have taken at least a few minutes. It also would have taken some time for Abell to establish rapport with Coleman—as any seasoned defense attorney can attest—and Abell would have had to explain the proceedings to Coleman and advise him of his rights. And who would think Abell could have done all of this while at the same time reading thirty-four pages of reports and discovering mitigating evidence in just twelve minutes.

When looking at all the things Abell should have done, it is obvious that Abell's extreme lack of time for adequate preparation would have precluded any lawyer from providing effective advice or learning anything meaningful about his client. Having no more than twelve minutes to meet with his client and review all the evidence, Abell was in no position to serve as Coleman's counsel. As a result, Abell failed to employ his legal skills in advocating Coleman's position at his supervised release violation hearing.

Abell's inability to serve as Coleman's advocate is manifested in Abell's failure to say anything about any of the mitigating factors the district court could have considered. Despite what the majority says, nothing in the record suggests Abell was aware of the mitigating circumstances, such as Coleman's not getting the substance abuse treatment he needed, and having a wife and child at home. *See* Maj. Opn. at 8 ("[I]t appears that Abell himself may have been aware of these [mitigating] facts as well"). This is the extent of what Abell said on Coleman's behalf:

> [Court]:          Would you like to speak on behalf of Mr. Coleman before I impose sentence?
>
> [Abell]:          Judge, I guess the record indicates at worst that Mr. Coleman has an ongoing substance abuse problem that he's struggled with significantly, and certainly the court has familiarity with his history

and I am sure will take that into consideration when determining what action is appropriate today.

(R. 266 at 727-28.)

The district court only learned about the mitigating factors from Coleman, who spoke on his own behalf after Abell's single sentence statement. *See id.* at 728-38 (conversation between Coleman and the court). Abell, on the other hand, hardly said anything. The only thing Abell even mentioned was Coleman's substance abuse problem and his history of addiction, neither of which paint a pretty picture.

An attorney is expected to "forceful[ly] advoca[te]" on behalf of his client in court. *Penson v. Ohio*, 488 U.S. 75, 85 (1988). The Sixth Amendment requires "careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over." *Id.* The right to counsel, therefore, is the "right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Cronic*, 466 U.S. at 656. "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." *Id.* at 654-55. "The paramount importance of vigorous representation follows from the nature of our adversarial system of justice." *Penson*, 488 U.S. at 84. Our legal system is premised "on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Id.* (internal quotation marks omitted). Since it is unlikely that a criminal defendant will adequately be able to fight the government's case without representation, *id.*, the adversarial process requires that a defendant "have 'counsel acting in the role of an advocate.'" *Cronic*, 466 U.S. at 656 (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)).

As Justice Brennan put it, "[t]o satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court." *Jones v. Barnes*, 463 U.S. 745, 758 (1983) (Brennan, J., dissenting); *see also Ferri v. Ackerman*, 444 U.S. 193, 204 (1979) ("Indeed, an indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.").

At no point during the hearing did Abell subject the prosecution's violation of supervised release case to "meaningful adversarial testing." *Cronic*, 466 U.S. at 656. Instead, Abell did just the opposite—he spoke only to emphasize the negative aspects of Coleman's background, *i.e.*, Coleman's substance abuse problem and history before the court, without any mention of the mitigating circumstances favoring his client. As a result, Coleman himself was forced to attempt to bring those mitigating factors to the court's attention. And look what happened when Coleman, an indigent defendant with at most a GED[3], was forced to become his own advocate— he received a sentence that was three months above the high-end of the sentencing range. Abell did not act as an advocate for Coleman, but rather like a friend of the court and the prosecution— someone whose only role that day was to help the court fast-track Coleman through the system.

III.

The majority opinion makes the incredible claim that what occurred at Coleman's supervised release violation hearing was his own fault. In other words, the majority says that Coleman is to blame for being fast-tracked through the system simply because he asked for a new lawyer. *See* Maj. Opn. at 9 ("The speed with which Coleman's case progressed was therefore determined by Coleman himself, not by Abell, the prosecutor, or the court.").

The district court, when granting Coleman's request for new counsel, said it best: "nothing is Mr. Coleman's fault." (R. 266 at 725.) And who would argue otherwise—that Coleman should be punished, *i.e.*, denied sufficient time to consult with his newly-appointed lawyer, all because he decided to ask for the appointment of new counsel. Essentially, what the majority opinion is saying is that Coleman's request for new counsel justified the district court in failing to provide him with an attorney who would effectively advocate on his behalf.

The majority also suggests that Coleman's not asking for an adjournment was his own fault. Here is why the majority opinion is so clearly wrong: Coleman could not possibly be expected to make an informed, strategic decision when he only had twelve minutes to get legal advice. There is no question that Coleman's acquiescence in going forward was a bad idea; and we need look no further than the two and a half year prison sentence he received as evidence of

---

[3]The PSR lists Coleman's education as: "GED (unverified)" (R. 264 at 642).

that. But his agreeing to move forward was the result of not being adequately and properly counseled. In the tense environment of the courtroom setting, Coleman was introduced to his new attorney within seconds of being advised that his existing attorney was being relieved of all responsibility. This is what happens when events move so incredibly fast that the defendant is afforded no time to absorb or reflect upon the significance of what is happening. It is no surprise that a defendant is likely to make the wrong decision when his lawyer has only twelve minutes to meet with him for the first time, as occurred in this case.

It was not Coleman's fault—as the district court explained—that he wanted a new lawyer; obviously, from the district court's comments, the court agreed that it was necessary or appropriate for Coleman to acquire new representation. Accordingly, it was not Coleman's fault if there was the possibility of any delay resulting from his request for new counsel. Furthermore, it was not Coleman's fault if any additional time was needed to bring his new counsel up to speed. Nothing that happened here was Coleman's fault, including the court's and his own attorney's decision to rush him through the system. All Coleman did was request new counsel; and the majority's suggestion that Coleman should be blamed for anything is completely baffling.

In that same vein, the majority suggests that Coleman's single statement that he "wanted to get [the hearing] out of the way," (R. 266 at 727), somehow constitutes a waiver of his Sixth Amendment right to counsel. In other words, the majority claims that Coleman waived his right to counsel by telling the court that he did not want a continuance and that he was ready to plead guilty. But the law requires more than that. "[A]n accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made 'searching or formal inquiry' to ensure that his waiver is knowing, intelligent, and voluntary." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (en banc) (quoting *Patterson v. Illinois*, 487 U.S. 285, 292 & n. 4, 298-300 (1988)). Where a fundamental constitutional right, such as the right to counsel, is concerned, "courts indulge every reasonable presumption against waiver." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Of course, the district court in this case did not make any kind of inquiry into whether Coleman was waiving his right to counsel, and there can be no serious dispute that Coleman's

stray comment that he "wanted to get [the hearing] out of the way" did not constitute a valid waiver. And again, Coleman's insistence on going forward means little, if anything—it only highlights his lack of understanding of the court's procedures and what was about to happen.

## IV.

When one looks at this case, one cannot help but think about all of the negative stereotypes about the public defender system. Very often in the public's mind there is this sense that a public defender handles far too many cases at one time, and is not able to dedicate enough time to any particular client. It is probably accurate to say that among many criminal defendants, the public defender system has an unfortunate reputation. This case of rushed justice, in which the inadequacy of the legal representation amounted to virtually no representation at all, does nothing to help that image.

All of this begs the question of what the district court should have done, or how it should have conducted the sentencing proceeding. The answer is obvious. It would have been a simple matter for the court to have adjourned the sentencing to permit newly-appointed defense counsel the opportunity to acquaint himself with his client, the applicable sentencing guidelines, the evidence, and the facts of the case. Obviously, at this juncture, this Court should remand for resentencing with the simple admonition that the district court permit Coleman's attorney to acquaint himself with the matter in advance of resentencing.

The bottom line is that Abell was placed in circumstances in which even the most experienced and competent counsel would not have been able to render effective assistance; and Abell completely failed to subject the prosecution's case to meaningful adversarial testing. As a result, Coleman was constructively denied counsel, and has established a Sixth Amendment violation under *Cronic*. And because Coleman is not required, under these circumstances, to show prejudice, his case should be remanded for resentencing. To be blunt, if this situation does not amount to constructive denial of counsel, then nothing will.